## WARE *v.* STATE.

### Opinion delivered December 6, 1920.

1. REMOVAL OF CAUSES—RACIAL DISCRIMINATION.—A murder case is not removable from the State court to the Federal court because the defendants are negroes, and negroes have been excluded from previous grand juries and from the grand jury which indicted the defendants.

2. CRIMINAL LAW — CHANGE OF VENUE.—Where a petition for a change of venue was supported by the affidavits of four negro men who testified that their belief that the defendants could not obtain a fair and impartial trial in the county was predicated upon the sentiment that they had heard expressed principally in the vicinity of their residences and upon an article appearing in a local paper, but their examination showed that they had no general acquaintance throughout the county, had not visited various portions of the county since the indictments were returned, and had no opportunity to know the general sentiment

of those qualified to serve as jurors throughout the county, the lower court did not abuse its discretion in denying the petition.

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—RACE DISCRIMINATION. —Whenever by any action of a State, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a negro, the equal protection of the laws is denied, contrary to the Fourteenth Amendment.

4. CRIMINAL LAW—CONSTRUCTION OF RECORD.—Where the record recites that defendants' motions to withdraw their pleas and to move to quash the indictments were overruled, but later recites that defendants were permitted to file their motions to quash the indictments, which were overruled, were then arraigned and pleaded not guilty, the record will be held to show that the motions to quash were presented before their arraignment.

5. CONSTITUTIONAL LAW—EQUAL PROTECTION.—Where a negro defendant in a murder case moved to quash the indictment upon the ground that negroes had been excluded from the grand jury that found the indictment on account of their color, it was error to overrule the motion without hearing evidence in support of the allegation.

6. JURY—CHALLENGE TO THE PANEL.—A challenge to the panel of the petit jury may be made at the time when the accused is called upon to select a jury for the trial, although he has already been arraigned and pleaded to the indictment.

7. INDICTMENT AND INFORMATION—OBJECTION TO PANEL OF GRAND JURY.—A motion to quash the indictment because of objection made to the grand jury is in the nature of a plea in abatement, and must come before the plea in bar.

8. INDICTMENT AND INFORMATION—PLEADING.—Where applicable, the rules of pleading in civil and criminal proceedings are the same.

9. INDICTMENT AND INFORMATION — ERROR IN NAMING CRIME.—In cases of indictment the name of the crime is controlled by the specific acts charged, and an erroneous name does not vitiate the indictment.

10. CRIMINAL LAW—EFFECT OF MOTION TO QUASH INDICTMENT.—In a murder case, a paper styled "a motion to quash the indictment" will be treated as a challenge to the panel of the petit jury where that was the purpose of the instrument.

Appeal from Phillips Circuit Court; *J. M. Jackson*, Judge; reversed.

Ed. Ware, Will Wordlow, Albert Giles, Joe Fox, John Martin, and Alf Banks, Jr., were convicted of murder, and appeal.

*Scipio A. Jones* and *Murphy, McHaney & Dunaway,* for appellants.

1.   It was error to deny the petition for removal to the Federal court.   154 U. S. (38 Law. Ed.), 901; 170 U. S. 213; 100 *Id.* 303.

2.   It was error to overrule the petition for change of venue without giving any reason.

3.   The denial of the petitions to temporarily withdraw the pleas of not guilty for the purpose of presenting motions to quash the indictments was an abuse of discretion.   100 U. S. 303.   The motions to quash should have been restrained for maladministration of the law in selecting jurors.   *Ib.*

4.   In completing the juries only white men were summoned.

5.   The testimony of Aubrey Burke was wholly irrelevant and prejudicial.   The methods used were contrary to law.   2 Blackstone, Com. (3 ed., by Cooley), p. 325.   See 154 U. S. 34-45; 162 *Id.* 566; 121 Ark. 220-226; 37 S. E. 627; 107 Atl. 554; 132 Cal. 631; 100 N. Y. S. 126; 69 S. W. 536; 65 *Id.* 1093; 85 Pac. 63.

6.   The court erred in instructions 9 and 10 for the State, and the giving of No. 6 did not cure the error. 100 Ark. 218-24.

7.   Evidence of another crime or offense was not admissible.   72 Pa. St. 63; 73 Ark. 262; 75 *Id.* 427; 91 *Id.* 558.   The testimony was incompetent.   The evidence is not sufficient to sustain a conviction, besides the many errors in the admission of testimony and the errors in the instructions.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

1.   There was no error in denying the petition for removal to the Federal court.   170 U. S. 38; 162 *Id.* 566; 121 Ark. 226.

2.   No error in overruling motion for change of venue.   Kirby's Digest, § 2317.   The testimony of the subscribing witnesses does not meet the requirements of

the statute. 121 Ark. 326; 107 *Id.* 29; 76 *Id.* 279; 80 *Id.* 360; 98 *Id.* 137; 95 *Id.* 241.

3. The court properly denied appellants' petition to temporarily withdraw the pleas of not guilty. No discrimnation in the administration of the law in this State was shown. 100 U. S. 313.

4. No errors were committed in the admission of testimony nor was there any error in the instructions. The verdict is supported by the evidence and there is no error in the instructions.

WOOD, J. These cases are separate appeals from judgments of the Phillips County Circuit Court. The cases have been consolidated here for the purpose of briefing, and they can be disposed of in one opinion. This is the second appeal. *Banks* v. *State,* 143 Ark. 154.

On the second trial each of the defendants was convicted of murder in the first degree, and by the judgment of the court sentenced to death. When each case was called for trial in the lower court, each defendant filed a petition for removal to the Feneral court, in which, among other things, it was alleged that the defendant was a negro, and that both the grand and petit juries were made up exclusively of white men; that negroes were excluded from the juries solely on account of their color; that this was pursuant to a custom and practice which had been sanctioned by the circuit courts and Supreme Court, by which the defendant was deprived of his right under the Constitution and laws of the United States. The court refused to remove the causes to the Federal court. Each of the defendants then filed a petition for a change of venue, duly verified by them and supported by the affidavits of four negro men, who testified in substance that their belief that the defendants could not obtain a fair and impartial trial in Phillips County was predicated upon the sentiment they had heard expressed principally in the vicinity where they resided and from reading an article appearing in the Helena World. It was shown that the Helena World was a daily newspaper

published in Helena; that it had a general circulation over Phillips County among the whites and also among the negroes; that on the 7th day of October, 1919, an article was published in that paper headed "Inward Facts About the Negro Insurrection." That article was the report of a committee of seven, consisting of the president of the Business Men's League of Helena, the sheriff, the county judge, the mayor of the city of Helena, and other prominent citizens, who were chosen to conduct the investigations with a view of punishing the guilty. Among other things the article stated that the present trouble with the negroes in Phillips County is not a race riot. It is a deliberately planned insurrection of the negroes against the whites, directed by an organization known as the Progressive Farmers and Household Union of America, established for the purpose of banding negroes together for the killing of white people. The article was quite lengthy and entered into detail showing how the organization of the negroes was brought about, the purpose for which it was organized, and the plans adopted for carrying out such purpose. Among other things, it was stated that Robert L. Hill, who organized the union, told the members that it was necessary for them "to arm themselves in preparation of the day when they should be called upon to attack their white oppressors." He told them that the government had called the organization into existence, and it would be supported by the government in defense of the negroes against the white people; that those of the union who were not able to buy munitions would be supplied by the union from the government storehouse at Winchester, "where arms, munitions, and trained soldiers would be ready for instant use." The article stated that "every negro who joined these lodges was given to understand that ultimately he would be called upon to kill white people;" that the time for the attack had been set, but plans had not been entirely perfected, and the shooting of the officers brought on the insurrection ahead of schedule. The usual expression of Hill

to the members of the union was "get your racks filled for the day to come." The court denied the petition for change of venue, and the defendants duly excepted to the ruling.

The defendants in each case filed a motion asking that they be allowed to withdraw their former pleas of not guilty. They set up that when these pleas were entered they had been given no opportunity to procure counsel of their own choice and knew nothing of their rights. They also asked in these motions that the indictments be quashed because the grand jury that indicted them was composed wholly of white men, negroes being excluded therefrom solely because of their race. The defendants in each case filed a motion which is entitled "Motion to Quash the Indictment." In this motion it is alleged that the grand jury which found the indictment was composed of white men selected by the jury commissioners, who were also white men, negroes being excluded therefrom on account of their color; that the jury commissioners selected the grand jury and also excluded all colored men therefrom solely on account of their color, in violation of their rights under the Fourteenth Amendment and the laws of Congress. Included in this motion was the further allegation "that the present petit jury to serve at the present term was selected in the same way, colored men being excluded by the jury commissioners on account of their color." The motion concluded with a prayer that "the jury commissioners who selected the juries be summoned to testify to the matters set up in the motion and that the indictments be quashed and the present panel of the petit jury be set aside." The court overruled the "motion to quash the indictment," and the record shows that "to the action of the court in overruling the motion to quash the indictment and refusing to hear evidence upon said motion, the defendants duly and properly excepted." Each of the defendants was then arraigned and entered a plea of not guilty.

The regular panel of the petit jury was composed wholly of white men. The jury in each case was completed after the exhaustion by the defendants of their peremptory challenges, and only white men returned by the sheriff as talesmen, or jurors, on the special *venire facias* ordered by the court. All the defendants, except Martin, moved to quash and set aside the sheriff's return of talesmen under the special *venire facias* ordered by the court on the ground that "they were colored men, of African descent, and that the sheriff in summoning the talesmen for the completion of the jury had discriminated against them, on account of their race and color, by rejecting and refusing to summon any colored man, of whom there were many qualified to serve on the jury, solely because of their color, thereby denying to them the equal protection of the law, and due process of law, in violation of the rights guaranteed to them under the first section of the Fourteenth Amendment to the Constitution of the United States." The prayer of these motions was that "the court hear evidence hereon and that the sheriff's return to said order be quashed and the talesmen discharged." The record shows that "the motion to quash the sheriff's return to the special venire was by the court overruled, and that to the ruling, order and action of the court in overruling said motion and in failing and refusing to hear evidence thereon, the defendants at the time duly and properly excepted."

I. The court did not err in refusing to remove the causes to the Federal court. There is nothing in our Constitution or statutes, or in the interpretation thereof by this court, to show that jurors of the African race are excluded from jury service in this State solely on account of their color. There has been no interpretation of our Constitution and laws by this court to show that in advance of a trial negroes could not enforce in the judicial tribunals of this State all the rights belonging to them in common with their fellow citizens of the white race. *Castleberry* v. *State*, 69 Ark. 346. Such is not the

law nor the public policy of this State or in any portion of it. The fact, therefore, that negroes had been excluded because of their race from previous grand juries and the grand jury which indicted the defendants, even if such were the fact, would not authorize a removal of the causes to the Federal court. *Gibson* v. *Mississipi,* 162 U. S. 566; *Smith* v. *Mississippi,* 162 U. S. 592; *Tillman* v. *State,* 121 Ark. 322.

II. A majority of the court is of the opinion that the lower court did not err in denying the appellants' petition for a change of venue. The affiants to the supporting affidavits were examined at length. Their examination showed that they had no general acquaintance throughout the county, had not visited various portions of the county since the indictments were returned, and therefore had no opportunity to hear an expression of the general sentiment of those qualified to serve as jurors throughout the county. They, therefore, had no knowledge or information, except of a very limited and local character, of any prejudice existing in the minds of the inhabitants of the county. They based their belief mainly upon reading the report of the committee in the Helena World concerning the "Insurrection of the Negroes" against the whites, and we can not say, as a matter of law, that this inflammatory article was sufficient foundation to justify the affiants in swearing that they believed that the minds of the inhabitants of the county were so prejudiced against the appellants that they could not obtain a fair and impartial trial. *Tillman* v. *State, supra,* at pages 326, 327; *Wolfe* v. *State,* 107 Ark. 29; *Williams* v. *State,* 103 Ark. 70; 100 Ark. 218; *Hobson* v. *State,* 121 Ark. 79; *Dewein* v. *State,* 120 Ark. 302. A majority of the court is of the opinion that the lower court did not abuse its discretion in holding that the affiants who signed the supporting affidavits were not credible persons in the sense of the statute, and therefore did not err in denying the petitions for a change of venue. In this conclusion the writer does not concur, for

he is of the opinion that the appellants had fully complied with the statute and were entitled to a change of venue.

III.　Facts well pleaded are set forth in the motions entitled "Motion to Quash the Indictment," which, if true, show that the petit jury was selected in violation of the Constitution and laws of the United States.　Fourteenth Amendment to the Constitution of the United States Revised Statutes, § 1977; Civil Rights Act of March 1, 1875, ch. 114, § 1; U. S. Comp. Stat. Ann., § 3926.　The motions, therefore, presented Federal questions which are controlled by the decisions of the Supreme Court of the United States.

In *Carter* v. *Texas,* 177 U. S. 442-447, it is said: "Whenever by any action of a State, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment to the Constitution of the United States. *Strauder* v. *West Va.,* 100 U. S. 303; *Neal* v. *Delaware,* 103 U. S. 370, 397; *Gibson* v. *Mississippi,* 162 U. S. 565." See also *Virginia* v. *Reaves,* 100 U. S. 313; *Smith* v. *Miss.,* 162 U. S. 592; *Williams* v. *Miss.,* 170 U. S. 213.　The same rule applies to petit juries.

In *Carter* v. *Texas, supra,* the motion to quash the indictment was in all essential particulars the same as the motions in the cases at bar.　It was presented before the defendant had been arraigned and entered his plea to the indictment.　In that case "the court refused to hear any evidence in support of the motion, and thereupon overruled the same without investigating into the truth or falsity of the allegations of the motion, to which action of the court, the defendant then and there excepted."　While there is a record entry in the present cases showing that the defendants presented a mo-

tion asking that they be permitted to withdraw their pleas entered at the former term of the court on the ground that they had been given no opportunity to employ counsel or procure an attorney of their own choice and knew nothing of their rights to move to quash the indictment and asking that they be permitted to file motions to quash the indictments, and showing that this motion was overruled, yet immediately following the above record entry is another record entry showing that the defendants were permitted to file their motions to quash the indictments and that these motions were overruled. Following this, the record recites in each case that "the defendant was then arraigned, asked to plead either guilty or not guilty to the indictment against him, and pleaded not guilty."

While the last two record entries are in apparent conflict with the first, yet, taking the whole record together, the effect of the last recitals is to show that the court reconsidered its action in refusing to allow the defendants to withdraw their former pleas and to file motions to quash the indictments, and did allow these motions to be filed before the appellants were arraigned and before their pleas were entered to the indictments on which they were put upon their last trial. "An arraignment is a reading of the indictment by the clerk to the defendant and asking him if he pleads guilty or not guilty to the indictment." Section 2272, Kirby's Digest. The statute does not contemplate two arraignments on the same indictment. Therefore, as we view the record in the present cases, it is conclusively shown that the motions to quash the indictments were presented and passed upon by the court before appellants were arraigned and entered their pleas.

"The question whether a right or privilege claimed under the Constitution or laws of the United States was distinctly and sufficiently pleaded and brought to the notice of a State court is itself a Federal question." *Carter* v. *Texas, supra; Neal* v. *Delaware, supra; Mitchell* v.

*Clarks,* 110 U. S. 633; *Boyd* v. *Nebraska, ex rel. Thayer,* 143 U. S. 135.

Did the court err in refusing to hear testimony on the motions? While no written pleas were required of the State in answer to the motions, yet it does not appear that the State, orally or otherwise, in any manner controverted the facts set forth in the motions. The prosecuting attorney did not ask that witnesses be called to disprove the allegations. But the appellants prayed that the "jury commissioners who selected the juries be summoned to testify upon this motion," and that the indictments be quashed, and the present panel of the petit jury be set aside. The record thus shows an offer and an attempt upon the part of the appellants to introduce evidence in support of their motions. *Brownfield* v. *So. Car.,* 189 U. S. 427. Under these circumstances the ruling of the court in refusing the prayer of appellants to hear evidence on the motions was but tantamount to disposing of the same as if on demurrer. *Castleberry* v. *State,* 69 Ark. 346. The ruling of the court was equivalent to saying that the facts, although properly pleaded and true, were in law not sufficient. In *Castleberry* v. *State, supra,* after quoting from *Carter* v. *Texas, supra,* we held that it was error to overrule a similar motion, and concluded the opinion by saying: "The court below erred in overruling the motion to quash without hearing the evidence. The appellant was entitled to introduce testimony to sustain the allegations in his motion." This doctrine was also recognized in *Franklin* v. *State,* 85 Ark. 534, but in that case the motion was overruled because the defendant did not offer to introduce evidence in support of it. See also *Brownfield* v. *So. Carolina, supra; Rogers* v. *Alabama,* 192 U. S. 226. In the last case it is said: "It is a necessary and well settled rule that the exercise of jurisdiction by this court can not be declined where it is plain that the fair result of a decision is to deny the rights." In that case the State

trial court had stricken from the files a motion similar to the ones under review here because of its length.

In *Whitney* v. *State,* 59 S. W. 895, the Supreme Court of Texas, after citing *Carter* v. *Texas, supra,* and other decisions of the Supreme Court of the United States, says: ''We understand the court to have held in *Carter* v. *State,* above, that wherever the Federal question is made it is the duty of the court to probe the matter in order to determine whether or not the Fourteenth Amendment had been violated in the formation of the jury.'' We can not escape the conclusion, therefore, that the court erred in refusing to hear evidence upon appellants' motions and in overruling such motions without hearing the evidence. In addition to the other authorities above cited, see *Yick Wo* v. *Hopkins,* 118 U. S. 356; Brannon on the 14th Amendment, p. 336 *et seq.; Bush* v. *Kentucky,* 107 U. S. 110; *Ex parte Virginia,* 100 U. S. 339; *Rogers* v. *Alabama,* 192 U. S. 226; Collins on the 14th Amendment, p. 73; *Collins* v. *State,* 60 S. W. 42; *Bullock* v. *State,* 47 Atl. 62; see Taylor on Due Process of Law, p. 329 *et seq.*

But, if it be conceded that the court refused to hear the evidence and overruled the motions on the ground that the appellants had entered pleas on these indictments at a former term of the court and had failed to challenge the grand jury at the proper time and in the proper manner, and that the motions as to the grand jury were, therefore, too late, still no such reasons as these would avail in support of the ruling of the court in overruling appellants' motions to set aside the regular panel of the petit jury. Appellants alleged also that the petit jury was selected by the jury commissioners, and that colored men were excluded therefrom on account of their color. If appellants had already been arraigned and had pleaded to the indictments at a former term of the court, that term of court had elapsed, and the regular panel of the petit jury selected at that time had passed out with that term, and appellants at the succeeding term

were called upon to face an entirely new panel of the petit jury selected for the term at which the appellants were last tried. If the appellants were not allowed to challenge the regular panel of the petit jury at the term when they were called upon to face such panel and when the jurors were to be selected to try them, and if objection to the panel could be had only before arraignment and not thereafter, then in many cases defendants would be deprived entirely of the right to object to the panel of the petit jury from which jurors were to be selected to try them. Because it often occurs that several terms of court intervene between the time of an arraignment and plea on the indictment and the time when the accused is brought to trial. Motions for change of venue and continuance precede the trial of a case and are granted by the court in proper cases. It would be a vain and useless thing for a defendant to have to object to the panel of the petit jury at the beginning of the term and at the time the panel was being organized, when he intended at the same term, in good faith, to present a motion for continuance or change of venue, which he believed would result in postponing the trial to a future term. In such cases, if parties indicted could not object to the panel of the petit jury except before arraignment and plea to the indictment, they would be wholly deprived of the statutory right to challenge the panel of the petit jury, which they were called upon to face at the trial. Such is not the law, and no such procedure is prescribed by statute, State or Federal, and there is no sanction for such procedure in the decisions of the Supreme Court of the United States. An objection to the regular panel of the petit jury on account of illegality or irregularity in selection is not in the nature of a plea in abatement, and it is therefore not one of those motions which is necessary to be made *in limine*. *U. S.* v. *Gale*, 109 U. S. 65.

The same rule does not apply on motion to quash the indictment because of objection made to the grand jury. Such motion is in the nature of a plea in abate-

ment, and must come before the plea in bar. For, as is said in *Tillman* v. *State, supra,* "it should always be borne in mind that the indictment by the grand jury is a mere accusation, and that no person accused of crime is entitled to have the accusation made by any particular jurors, or class of jurors." But a person indicted for crime does have the right, when he is put upon his trial and called upon to face the panel from which the jury is to be selected to try him, to challenge the panel, and he is not called upon or required to make his objection before that time. In *Franklin* v. *State, supra,* the court recognized that a challenge to the panel of the petit jury could be made and filed on the day the case was called for trial. This is in conformity with our statute, which provides for a challenge to the panel of the petit jury when the case is called for trial. Kirby's Digest, §§ 2354-56. The motions to set aside the panel of the petit jury, therefore, at the term when the appellants were put upon their trial and at the time when they were called upon to select a jury for their trials, were in apt time.

The motions to set aside the panel of the petit jury, although embraced in what is designated in the record as "Motion to Quash the Indictment," were nevertheless also distinctively motions to set aside the panel of the petit jury. It must be conclusively presumed that the trial court informed itself of the contents and merits of the motions presented for its consideration by reading same or having such motions read in its hearing, before it ruled upon the merits of such motions. The trial court will not be heard to say that it did not so inform itself and that it was misled by the mere name in designation of a motion upon which it was called to rule. In civil proceedings this court has said that "the name by which a pleader designates his plea is immaterial. The plea should be treated according to its legal effect." *Rinehart & Gore* v. *Rowland,* 139 Ark. 90, 95; *Merritt* v. *School District,* 54 Ark. 468; *Randolph* v. *Nichol,* 74 Ark. 93; *Ryan* v. *Fielder,* 99 Ark. 374.

It is well settled that the rules of pleading in civil and criminal proceedings, where applicable, are the same.

Even in cases of indictment the name of the crime is controlled by the specific acts charged, and an erroneous name does not vitiate the indictment. *Harris* v. *State,* 140 Ark. 46; *Speer* v. *State,* 130 Ark. 457; *Kelly* v. *State,* 102 Ark. 657; *Harrington* v. *State,* 90 Ark. 596-99.

In these cases where human life is involved we feel that it would indeed be "splitting hairs" to say that the paper designated as the "Motion to Quash the Indictment" was not also a motion to set aside the regular panel of the petit jury selected by the jury commissioners. Even if we had the inclination, we do not possess the refinements of reason nor the subtlety of language required for such niceties of distinction. To say that these were motions to quash the indictments, but not also motions to set aside the regular panel of the petit jury, would be to give significance to the mere name and only one portion of the paper called the "Motion to Quash the Indictment," rather than to its contents and legal effect as a whole. This we cannot do.

Therefore, we conclude that, under the decisions of the Supreme Court of the United States above, the discrimination of the jury commissioners against the colored race in the selection of the petit jury, by which negroes were excluded from that jury solely on account of their color, rendered that selection illegal as to the appellants. That sort of discrimination in the selection of both grand and petit juries is in contravention of the Fourteenth Amendment to the Constitution of the United States, and the Civil Rights Act of March 1, 1875, *supra.* A majority of the court is of the opinion that the trial court erred in refusing to hear evidence on the motions to set aside the regular panel of the petit jury and erred in overruling such motions without hearing the evidence. The above errors must cause a reversal in all the cases.

Moreover, in all the cases except that of *Martin* v. *State,* as we have already stated, motions were made to

set aside the sheriff's return on the special *venire facias* issued under the orders of the court on the ground that the sheriff, in summoning talesmen in execution of this order, had discriminated against appellants on account of their race and color by refusing to summon any colored man to serve on the jury, solely because of his color, and praying the court to hear evidence thereon. The court refused such prayer and overruled the motions. We are all of the opinion that, under the above authorities, the court erred in refusing to hear evidence and in overruling the motions to set aside the sheriff's return on the special *venire facias.* This error alone would cause a reversal of all the cases in which the motion was made, towit, all the cases except that of *Martin* v. *State.* See *Whitney* v. *State, supra.*

IV. Various other assignments of error are made in the motions for new trial in these cases. It would unduly extend this opinion to discuss them, and we do not deem it necessary to do so for the reason that the causes for the errors indicated must be reversed and remanded for a new trial, and on a new trial the other errors assigned may not occur at all. Precisely the same questions may not be presented. We therefore do not express an opinion on other assignments of error. We refrain from commenting upon the testimony, because in the new trials the testimony may be different, or there may be still further developments.

For the errors mentioned the judgments are reversed and the causes are remanded for new trials.

McCULLOCH, C. J. (dissenting in the Martin case, concurring in the other cases). In all of these cases, except *Martin* v. *State,* I concur on the sole ground that the court erred in refusing to hear testimony on the motion to quash the sheriff's return of the special venire. We are drawn to that conclusion by decisions of the Supreme Court of the United States, to which we are bound to yield obedience, that court being the final arbiter of the question. I am not willing, however, to go further

than that court has decided for the purpose of reversing the judgments in cases where the record is otherwise free from error.

In the Martin case there was no motion to quash the special venire, and there are two sound reasons, I think, why the judgment in that case should not be reversed, on account of the court's failure to sustain the motion to quash the regular panel of the petit pury. In the first place, a ruling was not asked for on that part of the motion. The question is not whether the court read or should have read that part of the motion which related to the selection of the petit jury,—the question is, did the court rule on the motion adversely to appellant Martin or refuse to rule at all? It has been often decided by this court that a party waives a motion or plea if he goes to trial without insisting on a ruling of the court. There is no reason why this should not apply to criminal cases as well as civil cases. Appellant was represented by counsel of his own selection, who filed this motion for him. In the court's order it was merely recited that the motion to quash the indictment was overruled. Nothing was said in the order about the motion to quash the panel of the petit jury, and it is evident that the court did not rule on that part of the motion.

The motion to quash the regular panel of the petit jury came too late.

In the case of *Carter* v. *Texas*, 177 U. S. 442, this was said about the right to quash an indictment on the ground of discrimination against negroes: "Where the defendant has had no opportunity to challenge the grand jury which found the indictment against him, the objection to the constitution of the grand jury upon this ground may be taken, either by plea in abatement or by motion to quash, before pleading in bar."

The converse of that proposition is that the objection can not be so made if the accused had an opportunity to challenge the grand jury—in other words, if the alleged offense was committed before the grand jury was

impaneled.   We so decided in *Tillman* v. *State*, 121 Ark. 322.

Now the same rule ought to apply as to the right to quash the regular panel of the petit jury.   The jury is regularly and publicly impaneled as a part of the organization of the court, in the same manner in which the grand jury is impaneled.   Kirby's Dig., § 4527.   All objections to the panel ought to be made at that time, otherwise objections can only be made to individual jurors as they are selected in particular cases.   There is no error in the record of the Martin conviction, and the judgment should be affirmed.

Mr. Justice HUMPHREYS concurs herein.