BONE *v.* STATE.

4123

129 S. W. 2d 240

Opinion delivered June 5, 1939.

520

*F. W. A. Eiermann, Scipio A. Jones, Wallace L. Purifoy, Jr., Elmer Schoggen* and *Leon B. Ransom,* for appellants.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

BAKER, J.  An information filed in the circuit court charged Rome Bone and Mose Bone with having committed murder in the first degree by shooting and killing Mrs. Deaver.  The offense was alleged to have been committed on September 8, 1938.

Thereafter, on Monday, December 19, 1938, when the case was set for trial the state appeared by the prosecuting attorney, or his deputies, who announced ready for trial, and the defendants both were present in person by their attorneys, and, according to the record, "upon roll call, all twenty-four jurors answer present. Thereupon J. H. Hollis, Louis Hart and Harry Lytle ask leave to be excused from the panel, which is by the court granted, and comes W. H. Smith, E. S. Scott and J. H. Cowan, who are duly summoned by the sheriff, being colored electors of Pulaski county, are found to be qualified electors, and are duly sworn as petit jurors, and placed on the regular panel which is designated as panel No. 1 of this term of court."

Before the beginning of the trial of the case the defendants filed a motion to quash the venire of petit jurors, from which venire it was proposed to draw the petit jury by whom the defendants were to be tried.

It was alleged in the petition that the petit jury was composed exclusively of white persons and that all persons of color, or of African descent, known as negroes, were excluded from said jury on account of their race and color and for no other reason.

It is also alleged that the total population of Pulaski county is 137,727 and that 97,212 are white people and 40,215 are negroes; that of this total, approximately 11,347 are legal electors and of the number of legal electors 1,500 are negroes or of African descent, qualified to serve as grand and petit jurors.

The alleged facts were stated in another form to the effect that the negro population is about one-fifth of the total population of the county and about one-eleventh of the total legal electors of the county are persons of color or of African descent, known as negroes, but were excluded from the petit jury because of their race and color and for no other reason.

There was a further allegation that in the selection and formation of the present panel of the petit jurors, negroes were excluded for no other purpose or reason except that they are negroes.

There was a further allegation that no negroes have been selected, but that negro electors have been systematically excluded from serving as grand and petit jurors in Pulaski county for more than forty years solely because they are negroes, which is a discrimination against the defendants who are negroes and such discrimination is a denial to them of equal protection of the laws of the United States as guaranteed by § one of the Fourteenth Amendment to the Constitution of the United States of America.

They alleged that by methods used there is a denial of due process of law by the State of Arkansas, through its administrative officers, and pray that the present venire of petit jurors be quashed.

This motion was signed by their attorney, signed by the two defendants and sworn to before a notary public, and was duly filed. Upon the filing of this motion, the court made the following order: "This day comes the defendants by their attorney, S. A. Jones, and files a motion to quash the present venire of petit jurors, which is by the court denied, for the reason that there has been three colored men placed on the regular panel

before motion herein was filed. To which action of the court in denying said motion defendants except.''

After overruling the motion as set forth in the foregoing copied order made by the court, defendants were put to trial. Rome Bone was convicted of murder in the first degree and sentenced to death by electrocution, and Mose Bone was convicted of murder in the second degree and sentenced to the penitentiary for a period of twenty-one years. Upon this appeal several other alleged errors were presented and argued in a somewhat voluminous brief.

We prefer, however, for reasons that are obvious and that will appear later, to discuss what we think is the most important proposition upon this appeal, the alleged error in the overruling and denial of the motion above set out. It is urged now by the state that no evidence was heard upon this motion and on that account no prejudicial error appears therefrom.

We proceed to a discussion of this first problem. This is not a case of first impression on this subject in this state. A very similar matter was up for consideration and hearing nearly twenty years ago in the case of *Ware* v. *State*, 146 Ark. 321, 225 S. W. 626. In that case a similar question was presented to the trial court, as was before the circuit court of Pulaski county in this case. A motion was filed in that case alleging identical facts, with a similar prayer, that is to say, that negroes had been excluded from jury service because of, and on account of their race or color, and that this was a denial of equal protection of the law under the provisions of the Fourteenth Amendment to the Constitution of the United States. In addition to the allegation of these facts, the pleader in the Ware Case offered by a statement in the motion to make proof of the facts alleged, but in that case, as in this, the court, without hearing any evidence, overruled the motion and put the defendants to trial. It may be said that in neither case does the record disclose what the proof would have been had the court not promptly overruled the motion filed. In the Ware Case, *supra*, the court held that the

challenge to the petit jury, made when the jury was called for the trial, was in due time.

One of the errors found in the Ware Case was in the fact, as disclosed by the opinion, that it was error to overrule the motion without hearing evidence in support of its allegation. Of course, this implies that had the court heard this evidence, and if it had been sufficient to establish the fact of the systematic exclusion from jury service of members of the negro race solely on account of race or color, it was the duty of the court, upon such finding, to quash the venire or jury panel so formed under such conditions and circumstances. The court so declared.

The last statement finds conclusive authority and support in many decisions of the United States Supreme Court, some of which will be cited in our discussion.

Counsel for the appellants in this case make very strong averments of the fact that they were present in court with witnesses, ready to offer proof in support of the motion they had filed. The record does not disclose that they tendered any proof, so we must rely upon the recitals of the record. We find the court denying the motion filed and giving the reason for the action taken. The order is copied above.

We accord to the trial court every consideration and reasonable inference to support the action of the court, but when the court sets forth the sole reason for an order made in a particular matter, we are not at liberty to assume that there was some other reason not specifically set forth and not a reasonable inference or conclusion from the statement made, so it must appear, as it does conclusively in this case, that the court overruled this motion, not because its statements were untrue, or were not susceptible of proof, but rather on account of the fact that the error was confessed by anticipation of the motion filed and an effort was made to cure this error by excusing three members of the regular panel and substituting in their place three qualified negro electors, and these were placed upon the first panel and made a part thereof, taking the places of the three regular

members selected by the jury commissioners. They had been excused by the court without any reasonable or formal excuses having been announced for their retirement. The record discloses further that upon an examination as to the qualifications of these three new jurors placed upon the panel, although each was declared qualified to serve, the state peremptorily challenged each one. This fact is not stated by way of criticism of the trial court, nor of the prosecuting attorney. Had these three negro electors been regularly placed upon the panel of the jury by the jury commissioners in the discharge of their duties, there could not have justly been any criticism on account of the fact that there might not have been a negro juror in the final trial of the case. We are attempting to make clear and emphasize the matter that the test lies not in the fact that there was no juror of the negro race upon the trial jury, but the vice is in an omission by administrative officers, jury commissioners, for instance, in the systematic exclusion of negroes from the regular jury panel. In this case it is made clear that the jury commissioners had selected twenty-four members who constituted the regular jury panel from which the juries were to be drawn in the trial of cases. It was charged that, not only in this case, but in the formation of juries, the selection of the two panels, the negro electors had been systematically excluded, and that this had been practiced continuously for a period of forty years in the circuit court of Pulaski county. There was no denial of this charge, either by the filing of a response or answer to this motion, or by any act or announcement on the part of the court in overruling the motion. In fact, the court by its ruling refused to hear any evidence and assumed that by the removal of some of the members of the jury and the placing thereon of qualified negro electors there was the full and complete answer to the objection made. This procedure, on the part of the court, may be analyzed in the light given us by a comparatively recent decision of the United States Supreme Court, rendered without a dissent, which opinion is not only binding upon the courts of that jurisdiction, but binds with equal force appellate

and inferior courts of all the states. The case referred to is *Hugh Pierre, Petitioner*, v. *State of La.*, 306 U. S. 354, 59 S. Ct. 536, 83 L. Ed. 757. It is true in the Pierre Case evidence was offered tending to show the systematic exclusion of members of the colored race from the grand jury and petit jury panels. The motion was filed in that case in due time, praying that the grand jury and petit jury panels be quashed. The motion was not essentially different from the one filed in the case under consideration. The evidence is not set out with any degree of detail in the opinion. The court, however, announces the fact that the Louisiana courts had decided the issues of fact contrary to what the Supreme Court believed was justified under the evidence, and for that reason the Supreme Court of the United States proceeded to settle the facts first and then announced its conclusions of law applicable, as this was in itself a federal question as held in *Carter* v. *Texas*, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839. In order that this Louisiana case may be appreciated, we think it should be said that the trial court sustained the motion and quashed the petit jury, but refused to quash the grand jury panel or to enter an order of quashal of the indictment. The Louisiana Supreme Court, in what we consider a very able announcement of its position, held that inasmuch as an indictment found by the grand jury was no evidence of guilt, but that it was a mere charge that a crime had been committed, sufficient to put the defendant upon trial, the defendant suffered no substantial prejudice by reason of the fact that he had been indicted and charged with the commission of a crime by a grand jury, from which members of the negro race had been systematically excluded. Mr. Justice BLACK, in commenting upon these conditions said: ''And the State concedes here, as the Supreme Court of Louisiana pointed out in its opinion in this case, that 'it is especially provided in the (Louisiana) law prescribing the method of drawing grand and petit jurors to serve in both civil and criminal cases that there shall be no distinction made on account of race, color or previous condition (of servitude),'' and ''If . . . (qualified) members of the negro . . . race . . . have been sys-

tematically excluded from . . . service in the Parish of St. John . . . solely because of their race or color, the indictment should have been quashed." Exclusion from grand or petit jury service on account of race is forbidden by the fourteenth amendment. In addition to the safe-guards of the fourteenth amendment, Congress has provided that "No citizen possessing all other qualifications . . . shall be disqualified for service as grand or petit juror in any court of the United States, or of any State, on account of race, color or previous condition of servitude; . . ."

There are cited in support of these announcements of the rule the cases of *Strauder* v. *West Virginia,* 100 U. S. 303, 25 L. Ed. 664; *Carter* v. *Texas,* 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; *Martin* v. *Texas,* 200 U. S. 316, 50 L. Ed. 497, 26 S. Ct. 338.

In the cited case the court also announced that "his evidence was offered to show that Louisiana—acting through its administrative officers—had deliberately and systematically excluded negroes from jury service because of race, in violation of the laws and Constitutions of Louisiana and the United States."

There was cited by the court in this regard, the cases of *Norris* v. *Alabama,* 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; *Neal* v. *Delaware,* 103 U. S. 370, 26 L. Ed. 567; *Carter* v. *Texas, supra; Hale* v. *Kentucky,* 303 U. S. 613, 57 S. Ct. 753, 82 L. Ed. 1050.

We think it perhaps unnecessary to do more than cite and call attention to these numerous decisions of the United States Supreme Court for the reason that there is no substantial dispute as among lawyers generally as to the effect of these laws and their substantial requirements, nor is there any substantial dispute among the courts, as the general proposition, about the effect of the constitutional provisions as set forth in Amendment No. 14 or acts of Congress in relation thereto. The only difficulty or trouble arises in the practical application of these well-known, and we think, universally recognized, propositions of law. The case at bar forms a somewhat startling example. The objection made and

urged by the defendants and their counsel was not as to any individual member constituting the panels of the jury before which they were to be arraigned for trial. The objection was broader than that. It was made as against the panels of the jury, the venire as made up by administrative officers, wherein there had been the systematic exclusion of members of the negro race qualified to serve. If the objection made was tenable, and, no doubt, it was, it must have operated not to remove from the jury panel three members in whose places there might have been substituted qualified jurors of the negro race, but this objection was to the entire panel, and as Mr. Justice BLACK said in the Pierre Case, *supra,* the venire should have been quashed. The removal of three from an improper venire upon which twenty-one improperly were left, certainly did not cure the error or meet the requirements of the substantive law of the land. The difference in this case and the Pierre Case is not the fact that an indictment was regularly found by the grand jury in the Louisiana case, while in the case at bar, under what we think is perhaps a more modern practice, defendants were charged and tried upon information filed by the prosecuting attorney, and, of course, in such instances grand jurors are not required and did not return any indictment.

We have just called attention, however, to the fact that even a grand jury indictment must be held bad and must be quashed, although it furnish no evidence of guilt of the accused and that fact be judicially ascertained and determined by announcement of the highest court of the state, yet notwithstanding that fact a defendant may not be so indicted if there is the substantial form and semblance of discrimination by the systematic exclusion of members of the colored race and one of that race be indicted by grand juries so formed. So in this case, which contains all the elements as set forth by the motion, which is undenied, proof of which, no doubt, was deemed available, there was error in the failure to quash the entire venire of the petit jury. On account of this error both of these cases must be reversed, and the cases be remanded for a new trial.

It is also urged and argued most forcefully that there are several other errors in the record. One of these arises out of the form of information which charges that both of these defendants shot and killed Mrs. John Deaver. It is argued that, since she was shot only one time, only one of the two shot her. Without expressing any opinion as to any of the pertinent facts in the case, we suggest that according to the evidence offered on behalf of the state, both of the defendants were making an unlawful, if not felonious assault upon John Deaver when his wife made an effort to render help to him and was shot. The effect of this charge is that the two were acting jointly, both were present, so there was no such condition as accessory before or after the fact. Therefore, both were deemed as principals, their guilt may be determined and their punishments be fixed accordingly as a jury may find. But it is urged by the defendants in this regard that they were merely attempting to protect themselves against threatened felonious assault of John Deaver, who had the pistol and was threatening to shoot one or the other or both of them, and that in a struggle to secure the pistol it was fired and Mrs. Deaver was shot. These contradictory matters were questions to be determined by a properly qualified and empanelled jury, so we hold that the court was correct in overruling any objections or demurrer to this information.

Defendants also argue that their rights were prejudiced by reason of the fact that the court gave certain instructions particularly in regard to the law of self-defense. This objection, we think, is wholly without merit for the reason that if the defendants were not acting in self-defense, they were certainly making an unjustified assault upon John Deaver at the time the fatal shot was fired. Their only excuse or explanation for being engaged in a controversy or embroilment with Deaver is that they were acting in the defense of their persons against being killed or suffering great bodily harm.

There was an objection also to evidence tending to show that Deaver was pretty badly beaten up and one

of the witnesses who testified on behalf of the state was addled, if not beaten into a semi-conscious condition. While it is true the commission of an offense may not be established by proof that another offense had been committed, yet that principle is not involved in the issues here presented. All these matters were part of the *res gestae*. The state might not establish any semblance of a case without proof of these facts, nor could have the defendants explained their conduct without also offering some proof of these same matters. If there were other errors, such as the alleged insufficiency of the evidence on any particular proposition, or other alleged erroneous action, it can serve no useful purpose to enter upon any discussion thereof under present conditions, for the reason that as the cases will have to be tried anew such alleged errors may not appear upon a second trial.

For the error indicated above, the judgments of conviction are reversed, and the causes are remanded for a new trial.