BROWN *v.* STATE.

4530                              214 S. W. 2d 240

Opinion delivered October 25, 1948.

*W. Harold Flowers,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

Wine, J. Appellant was put to trial under an information charging him with the crime of assault with intent to kill alleged to have been committed by so assaulting one Boyd Cunningham, a member of the police force of Camden, Ouachita county, Arkansas. A verdict of guilty was returned by the jury assessing his punishment at five years in the State Penitentiary. From the judgment pronounced on that verdict comes this appeal.

Appellant, in his brief, urges a reversal of the judgment of the trial court for the following reasons:

I. The court erred in overruling appellant's motion to quash the information.

II. The court erred in overruling appellant's motion to quash the regular jury panel.

III. The verdict is contrary to the law and to the evidence.

I. *Motion to Quash Information.* Pursuant to Amendment 21 to the Constitution of the State of Arkansas, appellant was tried under an information filed by the Prosecuting Attorney and appellant insists that prosecuting him by information rather than by indictment returned by a grand jury is violative of his rights under both the state and federal constitution. Section 1 of Amendment 21 to the State Constitution reads as follows:

"That all offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the Prosecuting Attorney."

This amendment has been successively upheld by this court in many cases. Some of the more recent being

*Higdon* v. *State, ante,* p. 881, 213 S. W. 2d 621; *Washington* v. *State, ante,* p. 218, 210 S. W. 2d 307; *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131; and *Smith, et al.* v. *State,* 194 Ark. 1041, 110 S. W. 2d 24.

The Supreme Court of the United States has many times held that a state may—if it so desires—provide for prosecution by information rather than by indictment: *Hurtado* v. *California,* 110 U. S. 516, 28 L. Ed. 232, 4 S. Ct. 111; *Bolin* v. *Nebraska,* 176 U. S. 83, 44 L. Ed. 382, 20 S. Ct. 287; and *Gaines* v. *Washington,* 277 U. S. 81, 72 L. Ed. 793, 48 S. Ct. 468. For a more recent pronouncement on this point, see the case of *Paterno* v. *Lyons,* 334 U. S. 314, 68 S. Ct. 1044, in which Mr. Justice FRANKFURTER, in his concurring opinion said: ". . . So far as the United States Constitution is concerned, the states may dispense with accusations by grand juries, it is for New York and not for us to decide when the procedural requirements of New York law, not touching those fundamental safeguards which the United States Constitution protects, are satisfied."

Appellant quotes and seeks refuge in the dissenting opinion of Mr. Justice BLACK in the case of *Adamson* v. *People of the State of California,* 332 U. S. 46, 91 L. Ed. 1903, 171 A. L. R. 1223, 67 S. Ct. 1672, but the majority of that court held contrary to the views therein expressed by Mr. Justice BLACK and this court has followed the majority.

II. *Motion to Quash Panel of Petit Jurors.* Appellant, in apt time, filed his Motion to Quash Panel of Petit Jurors, in which appellant (omitting preamble) avers that: "in order to circumvent recent decisions of the United States Supreme Court reversing convictions in cases in which discrimination as is herein shown has been practiced a conspiracy, common understanding or method has been developed by which one or two Negroes are called whenever it appears that the unlawful method will be challenged. The defendant avers that the action of the Jury Commissioners of the present May, 1948, Term of the Ouachita Circuit Court, in naming two Negroes as members of the regular panel, is not

in good faith as no Negroes have ever been summoned for regular jury service for a period of fifty years, more or less; and as a result thereof all Negroes in Ouachita county, Arkansas, have been denied their constitutional right of trial by a jury of their peers.

"That the total population of Ouachita county, Arkansas, as of April 1, 1940, according to sixteenth census, is 31,151,. divided as to the races as follows: white, 16,446 and Negro, 14,697, that the Negro population is more than forty per cent of the total population; that the total number of electors eligible for consideration as jurors is 7,719; that defendant avers and believes that of the total number of electors in Ouachita county, 1,496, or approximately 20% of the total number of electors, are members of the Negro race.

"That 32 persons were summoned as jurors for the May, 1948, Term of Ouachita County Circuit Court; and that the said Jury Commissioners named only two qualified electors in the Negro race; that the said Jury Commissioners and their predecessors, for a period of 50 years, more or less, have never selected from qualified Negro electors, who had been, were, and still are, numerous on the list of qualified electors of Ouachita county, Arkansas, regular members of the jury panel; and further, the defendant avers and believes that the Jury Commissioners either of their own volition or upon a directive of the Judge of the said Ouachita County Circuit Court named the two present Negro members of the panel in order to prevent the present panel from being challenged successfully.

"That the two Negro members of the present panel are exempt from Jury service under §§ 8294 and 8295 of Pope's Digest of the Statutes of Arkansas.

"That no Negro has ever been named as jury commissioner in the Ouachita County Circuit Court, despite the fact that the Judge of the said Court is empowered to appoint three Jury Commissioners whose duty according to law is to select grand and petit jurors for the Ouachita Circuit Court.

"That there has been now and for a long time prior to a systematic exclusion of Negroes from jury panels despite the fact that the list of qualified jurors are designated by law according to race.

"The defendant charges that this constitutes a discrimination against him, a Negro, and such discrimination is a denial to him of equal protection of the laws of the United States of America as guaranteed by § 1 of the Fourteenth Amendment to the Constitution of the United States of America. Petitioner further alleges that due process of law is being denied by the State of Arkansas, through its administrative officers, and prays that the present Petit Jury panel be quashed."

Appellant's motion seems highly inconsistent in its various aspects. The substance of the said motion being that he, as a Negro, is being discriminated against and his constitutional rights violated by what he terms a systematic exclusion of members of his own race from juries in Ouachita county, yet at the same time admitting that two members of his own race were members of the regular jury panel, but avers that the jury commissioner's action "in naming two Negroes as members of the regular panel is not in good faith, as no Negroes have been summoned for regular jury service for a period of fifty years, more or less."

It does not seem important to a determination of this case what may or may not have been done or practiced in this respect in the past for a period of fifty years or any other number of years. Assuming that appellant might have produced proof that such practice may have been followed and may have been erroneously followed, if such practice was discontinued as is admitted by appellant in empanelling the jury present for service at the time of appellant's trial, it would seem to be a violent presumption or conclusion on the part of appellant that the action of the jury commissioners in naming two Negroes as members of the regular panel was not in good faith. On the contrary, would it not be more reasonable and plausible to assume that the jury commissioners selected these two Negro members

994

in perfectly good faith to strictly comply with the law of the land and to obviate any claim of discrimination. As to that portion of appellant's motion which avers that the two Negro members of the present panel were exempt from jury service under §§ 8294 and 8295 of Pope's Digest of the Statutes of Arkansas. Section 8294 provides that no members of certain professions or avocations or persons sixty-five years of age *shall be compelled* (italics supplied) to serve on grand or petit juries and § 8295 provides that any licensed undertaker or embalmer *may be excused* (italics supplied) from service on petit or grand juries. These sections are permissive and not a prohibition against such persons serving as members of petit and grand juries, but only permit such persons to claim exemption and such rights of exemption could not have here worked to the prejudice of appellant. It is not even suggested that such exemption was claimed by either of the two Negro jurors. The record in this case clearly shows that formal arraignment and drawing of the jury was waived by both appellant and the Prosecuting Attorney, and there is no showing that appellant exhausted all of his peremptory challenges or that the two Negro members were challenged by the state or did not in fact serve on the trial jury.

Assuming that appellant's figures are correct, and that there are 1,496, or approximately 20 per cent of the total number of electors of Ouachita county who are members of the Negro race, proportionate representation of races for selection as jurors has never been held to be mandatory: *Virginia* v. *Rives,* 100 U. S. 313, 25 L. Ed. 667; *Thomas* v. *Texas,* 212 U. S. 278, 53 L. Ed. 512, 29 S. Ct. 393.

Section 8306 of Pope's Digest of the Statutes of this state provides: "Selection by court. Jurors in both civil and criminal cases shall be selected as follows: The circuit courts at their several terms shall select three jury commissioners possessing the qualifications prescribed for petit jurymen, who have no suits in court requiring the intervention of a jury."

There is nothing in this record to indicate or suggest that the discretion of the trial court in its selection of jury commissioners was violated or in any wise irregular or prejudicial to appellant. On the contrary, the converse would appear to be true, by the admitted fact that said jury commissioners selected and included in the regular jury panel two members of appellant's own race. We are not apprised of any case in which this court or the Supreme Court of the United States has held that proportionate representation of race or class is prerequisite in the selection of jury commissioners.

Although not cited in the brief of either the appellant or Attorney General, we have closely scrutinized the case of *Ware* v. *State,* 146 Ark. 321, 225 S. W. 626, and distinguish this case in that it is here admitted that two members of the appellant's own race were included in the regular jury panel, whereas in the Ware case (*supra*) both the grand and petit juries were made up exclusively of members of the white race, the appellant Ware being a Negro. And furthermore, 31 Am. Juris. 621, § 90, states the rule to be as follows: "One objecting to a jury panel on the ground of unlawful discrimination in the selection of persons for jury service must allege such discrimination by asserting facts sufficient to show its existence, and must prove or offer to prove the facts alleged. An affidavit or a verified motion or challenge is not sufficient, of itself, to support a charge of discrimination in the selection of a jury, and the filing of such affidavit or verified motion or challenge does not dispense with the necessity of offering proof of the alleged discrimination."

What proof could appellant have offered to show discrimination or exclusion of members of his race from jury service with two such members admittedly standing by for service. This is particularly true when we consider appellant's assertion that Negroes were, in fact, placed on the jury panel for the express purpose of circumventing successful challenge. We, therefore, cannot

say that it was error for the trial court to overrule appellant's motion to quash panel of petit jurors.

III. *Sufficiency of the Evidence.* We now pass to the appellant's contention that the verdict is contrary to the law and the evidence. Section 2961, Pope's Digest, of the statutes of this state reads as follows: "ASSAULT WITH INTENT TO KILL. Whoever shall feloniously, willfully and with malice aforethought, assault any person with intent to murder or kill . . . and their counsellors, aiders and abettors shall, on conviction thereof, be imprisoned in the penitentiary not less than one nor more than twenty-one years."

The evidence may be summarized as follows: Boyd Cunningham, the arresting officer, testified that in the course of his duties as a member of the police force of the City of Camden, on the night of February 25, 1948, he encountered the appellant, together with others on the streets of Camden, engaged in an altercation with a colored taxi driver over the payment or nonpayment of a taxi fare by the appellant. At the outset the officer requested only that the appellant and his associates quiet down and soften their language, that their actions and language already justified an arrest for disturbing the peace, as a considerable number of people had gathered around the appellant and his group. To this, appellant replied that "No white --- -- - ----- is going to arrest . . . ," and started walking away from the officer. The officer followed, and in attempting to take the appellant into custody, slipped and fell. A physical encounter then ensued, and the appellant wrested from the officer (Cunningham) the officer's service revolver, which he (appellant) attempted to use on the officer until two bystanders rushed to the officer's assistance. One of said bystanders held the cylinder of the revolver so that it could not be fired by the appellant.

This testimony was substantially corroborated by the two bystanders who came to the aid of the officer, and by one other witness. After considering all of the evidence, which we do not attempt to detail, and when giving it, as we must, its strongest probative force in favor of the State, the testimony was ample to warrant the jury's verdict of assault with intent to kill.

While not urged in appellant's brief, other assignments of error were set out in the motion for a new trial, all of which we have considered and found to be without merit. After a review of the instructions offered and given the jury and a consideration of the entire case, we find no reversible error.

The judgment of the Circuit Court is, therefore, in all things affirmed.

It is so ordered.

ED. F. McFADDIN, Justice (dissenting). I respectfully dissent, because (1) the trial court erred in refusing to allow the appellant to introduce evidence on his motion to quash the venire; and (2) this error calls for a reversal. This case is ruled by our own cases of *Ware* v. *State,* 146 Ark. 321, 225 S. W. 626, and *Bone* v. *State,* 198 Ark. 519, 129 S. W. 2d 240, as well as by numerous cases decided by the Supreme Court of the United States, many of which are cited and discussed in the annotation in 82 Law Ed. 1053, entitled "Violation of Constitutional Rights of Defendants in Criminal Cases by Unfair Practices in Selection of Grand or Petit Jurors."

In the case at bar the appellant filed his motion to quash the panel of petit jurors. The motion—copied *in extenso* in the majority opinion—alleged, *inter alia,* that the action of the jury commissioners denied the defendants their constitutional right of "trial by a jury of their peers," and that the inclusion of two Negroes on the jury panel was in a studied effort to deprive the defendants of a fair petit jury panel. It was not a question of whether the judge had correctly instructed the jury commissioners, but it was a question of whether the jury commissioners—after receiving the court's instructions—had, by their very method of procedure, circumvented the defendant's claimed constitutional rights. Here is a verbatim copy of the entire proceedings on this motion to quash:

"Court: I have before me your motion to quash the jury panel based on the allegation of discrimination against the Negro race. The Jury Commissioners were

appointed by the Court in the usual and customary manner, and they were duly sworn in accordance with the Statute, and instructed by the Court,—the jury commissioners were under specific instructions, and were admonished that there must be no discrimination shown in the selection of the jury, and that no person should be disqualified because of his race, creed or other such matters. The Jury Commissioners were advised that the Court was requiring them to select people of all races residing in Ouachita County so far as they were able to do so, and in accordance with the Court's instructions the jury commissioners selected the present panel, which includes two members of the Negro race—they are on the jury panel and present today. The motion will be overruled.

"Counsel for Defendant: We save our exceptions to the ruling of the Court. I would like to present the Court with some proof in connection with that motion. I would like to say that it is a sincere effort made to determine this question from a standpoint of proportional representatives on juries. In a recent decision appealed from the Jefferson Circuit Court to the Supreme Court—in that case it appears from the opinion that we should have put in more proof from the jury commissioners with regard to the selection of the jurors. For the purpose of the record, I would like to ask the Court to permit me to examine the present Jury Commissioners, and the prior commissioners who are available, together with the examination of the Clerk of the Court and the Sheriff.

"Court: What do you want to do that for?

"Counsel for Defendant: I want to establish the manner in which the jury is selected; in other words, it is my contention that the placing of one member of the Negro race on the jury does not meet a substantial compliance with the constitutional provisions.

"Court: I think that the record speaks for itself; the Jury Commissioners were instructed just exactly as the Court has stated, they were told to select this jury

without discrimination of race, creed or anything else, those are the facts and the record speaks for itself. If there had not been Negroes on other juries in this county, and you disqualify this jury, it would seem to me that it would make it impossible to try one of these cases at all. The request will be denied.

"Counsel for Defendant: We save our exceptions to the ruling of the Court."

The Court's ruling, as reflected by the above, was tantamount to the trial court refusing to hear evidence, because—as the trial court said—the jury commissioners had been correctly instructed. Even so the appellant was entitled to introduce evidence in his effort to show that the jury commissioners had not complied with the law and the instructions of the court. It is not for us to speculate—as I think the majority has done—as to what the defendant would have been able to show by the proof that he wanted to offer. The point is that he was not allowed to offer any proof. In *Ware* v. *State,* 146 Ark. 321, 225 S. W. 626, decided by this Court on December 6, 1920, the same point was made. There, the defendants filed a motion to quash the panel, and the motion was overruled without allowing the defendants to introduce testimony. This Court held that such proceeding was error. Here is a portion of that opinion:

"Did the court err in refusing to hear testimony on the motions? While no written pleas were required of the State in answer to the motions, yet it does not appear that the State, orally or otherwise, in any manner controverted the facts set forth in the motions. The prosecuting attorney did not ask that witnesses be called to disprove the allegations. But the appellants prayed that the 'jury commissioners who selected the juries be summoned to testify upon this motion,' and that the indictments be quashed, and the present panel of the petit jury be set aside. The record thus shows an offer and attempt upon the part of the appellants to introduce evidence in support of their motions. *Brownfield* v. *S. Car.,* 189 U. S. 427. Under these circumstances the ruling of the court in refusing the prayer of appellants to hear evidence on

the motions was but tantamount to disposing of the same as if on demurrer. *Castleberry* v. *State,* 69 Ark. 346. The ruling of the court was equivalent to saying that the facts, although properly pleaded and true, were in law not sufficient. In *Castleberry* v. *State, supra,* after quoting from *Carter* v. *Texas, supra,* (177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839), we held that it was error to overrule a similar motion, and concluded the opinion by saying: 'The Court below erred in overruling the motion to quash without hearing the evidence. The appellant was entitled to introduce testimony to sustain the allegations in his motion.' This doctrine was also recognized in *Franklin* v. *State,* 85 Ark. 534, 109 S. W. 298, 24 S. Ct. 257, but in that case the motion was overruled because the defendant did not offer to introduce evidence in support of it. See, also, *Brownfield* v. *So. Carolina, supra; Rogers* v. *Alabama,* 192 U. S. 226. In the last case it is said: 'It is a necessary and well settled rule that the exercise of jurisdiction by this court cannot be declined where it is plain that the fair result of a decision is to deny the rights.' In that case the State trial court had stricken from the files a motion similar to the ones under review here because of its length.

"In *Whitney* v. *State,* 42 Tex. Crim. R. 283, 59 S. W. 895, the Supreme Court of Texas, after citing *Carter* v. *Texas, supra,* and other decisions of the Supreme Court of the United States, says: 'We understand the court to have held in *Carter* v. *State,* above, that wherever the Federal question is made it is the duty of the court to probe the matter in order to determine whether or not the Fourteenth Amendment had been violated in the formation of the jury.' We cannot escape the conclusion, therefore, that the court erred in refusing to hear evidence upon appellants' motions and in overruling such motions without hearing the evidence. In addition to the other authorities above cited, see *Yick Wo* v. *Hopkins,* 118 U. S. 356; Brannon on the 14th Amendment, p. 336, *et seq.; Bush* v. *Kentucky,* 107 U. S. 110; *Ex parte Virginia,* 100 U. S. 339; *Rogers* v. *Alabama,* 192 U. S. 226; Collins on the 14th Amendment, p. 73; *Collins* v. *State,*

60 S. W. 42; *Bullock* v. *State,* 47 Atl. 62; see Taylor on Due Process of Law, p. 329, *et séq."*

The holding was summarized in this language: "A majority of the court is of the opinion that the trial court erred in refusing to hear evidence on the motions to set aside the regular panel of the petit jury and erred in overruling such motions without hearing the evidence. The above errors must cause a reversal in all the cases."

*Bone* v. *State,* 198 Ark. 519, 129 S. W. 2d 240, was decided by this Court on June 5, 1939. In that case, the defendant had filed a motion to quash the panel because Negroes had been excluded. In an effort to remedy that situation, the trial court excused three white jurors, and summoned in lieu thereof three Negro jurors. Even that proceeding was held to be irregular, and the judgment of conviction was reversed. Mr. Justice BAKER, speaking for this Court, said:

"This is not a case of first impression on this subject in this state. A very similar matter was up for consideration and hearing nearly twenty years ago in the case of *Ware* v. *State,* 146 Ark. 321, 225 S. W. 626. In that case a similar question was presented to the trial court, as was before the circuit court of Pulaski County in this case. A motion was filed in that case alleging identical facts, with a similar prayer, that is to say, that Negroes had been excluded from jury service because of, and on account of their race or color, and that this was a denial of equal protection of the law under the provisions of the Fourteenth Amendment to the Constitution of the United States. In addition to the allegation of these facts, the pleader in the Ware case offered by a statement in the motion to make proof of the facts alleged, but in that case, as in this, the court, without hearing any evidence, overruled the motion and put the defendants to trial. It may be said that in neither case does the record disclose what the proof would have been had the court not promptly overruled the motion filed. In the Ware case, *supra,* the court held that the challenge to the petit jury, made when the jury was called for the trial, was in due time.

"One of the errors found in the Ware case was in the fact, as disclosed by the opinion, that it was error to overrule the motion without hearing evidence in support of its allegation. Of course, this implies that had the court heard this evidence, and if it had been sufficient to establish the fact of the systematic exclusion from jury service of members of the Negro race solely on account of race or color, it was the duty of the court, upon such finding, to quash the venire or jury panel so formed under such conditions and circumstances. The court so declared.

"The last statement finds conclusive authority and support in many decisions of the United States Supreme Court, some of which will be cited in our discussion."

It is not a question of whether the defendant in the case at bar had a fair trial, or whether he was guilty. The point is, that he raised a Federal question; and it was the duty of the trial court to allow him to introduce evidence in his effort to develop his proof on the Federal question. Because he was not accorded such right to introduce proof, I think the case should be reversed and the cause remanded for a development of the proof on the Federal question. I therefore respectfully dissent from the affirmance of this case; and I am authorized to state that Mr. Justice HOLT joins me in this dissent.