HOWELL v. BASKINS.

4-8573 212 S. W. 2d 353

Opinion delivered June 21, 1948.

*G. B. Colvin,* for appellant.

*J. E. Brazil* and *Clay Brazil,* for appellee.

Minor W. Millwee, Justice. Appellants are the sole heirs at law of Thomas J. Howell, deceased, and were

plaintiffs in the circuit court in an action in ejectment against the defendant (appellee), James C. Baskins.

Plaintiffs alleged they were the owners and entitled to possession of a tract of land in Perry county described as follows: "All that part of the W½ of SE¼, Sec. 34, Tp. 5N, Rge. 18W, which lies between the east fork of Howell Creek and west fork of Howell Creek and more minutely described as follows: Starting at the northwest corner of said W½ of SE¼ and run south on the west line thereof 1,146 feet to the west bank of the east fork of Howell Creek which is the place of beginning, running thence south 998 feet to the east bank of the west fork of Howell Creek, running thence in a slightly southeasterly direction meandering with said east fork of Howell Creek to the east line of said W½ of SE¼, running thence north on said east line a distance of approximately 100 feet to the west or south bank of the east fork of Howell Creek running thence in a northwesternly direction meandering with the west or south bank of the east fork of Howell Creek to the place of beginning and containing 16 acres more or less." It was further alleged that defendant was wrongfully in possession of the property under claim of ownership and refused to deliver possession to plaintiffs.

In his answer defendant denied the allegations of the complaint and stated that he obtained title to the lands in controversy under a warranty deed from W. A. Hemingway on April 30, 1945. It was further alleged that defendant and his predecessors in title had been in actual, open, continuous, peaceful and adverse possession of said lands for more than 25 years; that during this period all the land between the east and west fork of Howell Creek as described in the complaint had been under fence; and that the west bank of the east fork and the east bank of the west fork of said creek had been considered the line between the plaintiffs' and defendants' land during said period.

It was stipulated at the trial that record title to the land was in the plaintiffs, thus casting the burden on defendant to establish his claim of title by adverse pos-

session. Trial to a jury resulted in a verdict and judgment for defendant and this appeal follows.

The first three and eleventh assignments of error challenge the sufficiency of the evidence to support the verdict. Howell Creek divides on or near the east line of the SW¼ of the SE¼ of section 34, township 5 N, range 18 west in Perry county. The east fork of the creek runs in a northwesterly direction while the west fork runs generally west and the land in controversy is located between the two branches of the creek.

The father of W. A. Hemingway occupied and cultivated the lands under claim of ownership prior to his death in 1917 or 1918. G. C. Smith testified that he had charge of the renting of the lands for W. A. Hemingway from 1925 to 1930 and that the lands were enclosed in a stone and wire fence that ran along the west bank of the east and west forks of Howell Creek. At that time a cross fence running north and south between the two forks of the creek cut off two or three acres which lay west of the east line of the 40-acre tract and was used as a lane by adjacent owners.

Jesse McCabe testified that he rented the land from W. A. Hemingway from 1934 or 1935 to 1937, inclusive, and cultivated all the land between the two prongs of Howell Creek and that said land was under fence. He also said Charlie Smith followed him in possession of the tract.

Charlie Smith stated that he rented the lands from W. A. Hemingway from 1938 until the land was purchased by defendant in 1945; that he cultivated and pastured the land under the rental contract from year to year until Hemingway wrote him that he was selling the land; and that he surrendered possession to defendant in 1945 when the latter showed him the deed from Hemingway. He also testified that Howell maintained a fence on the east side of Howell Creek while Hemingway and his tenants maintained a fence on the west side which extended all the way around the west bank of the two forks of the creek. All of the tenants paid Hemingway an annual rental of $20 for the land.

The defendant testified that he took possession of the land from Charlie Smith after he received the deed from Hemingway in April, 1945, and had since been in possession under claim of ownership. The land is a part of other lands which he purchased from Hemingway and a fence which runs alongside the west bank of the east and west forks of Howell' Creek has been maintained for more than 20 years by those who cultivated the lands under rental contracts from Hemingway. Defendant stated that about 15 years ago there was a lane on the east side of the tract near the point where the creek separated, but that he and Hemingway's tenants had, for the past 15 years, occupied the land up to the bank of the creek. He denied that he had surrendered possession of a small part of the east side of the tract to Mr. Lackey who had been in possession of the Howell lands on the east since 1946 under a contract of purchase with plaintiffs. Defendant stated that he permitted Lackey to pasture his cattle on part of the lands in controversy, but denied that the latter had occupied, or made any claim of ownership to, that part of the land formerly used as a lane.

Lackey testified he had used part of the lands in controversy to pasture his cattle since he moved on the Howell land in February, 1946. He contracted to purchase 68 acres from plaintiffs and thought he was buying the land in controversy, but had made no claim of ownership of any part of it to the defendant. He stated there was evidence of an old fence which ran north and south between the two branches of the creek west of the point where the creek separates, and that he used the land east of this fence line as a pasture. Armour Smith gave conflicting testimony as to whether Hemingway claimed title to and held possession of all the lands between the two branches of the creek.

The proof offered by defendant thus tended to show that the lands were fenced and continuously occupied and cultivated by him and the tenants of W. A. Hemingway for at least fifteen years prior to the institution of this action. W. A. Hemingway is a resident of California.

Since he did not testify, plaintiffs insist there is no evidence that he ever claimed title to the lands in controversy. It is undisputed that he rented the lands to tenants for 20 years and that his father occupied the lands for several years prior to 1918. The possession of a tenant is generally held to be that of his landlord. *Gee v. Hatley,* 114 Ark. 376, 170 S. W. 72. The evidence offered by defendant was substantial and sufficient to support the finding of the jury that defendant and those under whom he claims had been in adverse possession of the lands for more than seven years and the trial court did not err in submitting this issue to the jury.

Plaintiffs also contend that since defendant was without color of title to the lands in controversy, his possession could not be tacked to that of W. A. Hemingway. This question was decided contrary to plaintiffs' contention in the case of *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339, where the court said: "It is next contended that appellee can not claim the benefit of the adverse possession of her grantors because their deeds to her do not include the land. While it is true that the land described in the deed to her does not include the strip in controversy, still her grantors, whose adverse possession had probably already ripened into title, intended it should, and thought it did, and at the time of the conveyance transferred to her the possession of it in fact, intending that she should have all the land within the inclosure. This was sufficient, even if it be conceded that there was no conveyance of it in writing, and constituted such privity as entitled her to avail herself of his or their adverse possession and to tack her possession to theirs if necessary to complete her title and claim of ownership. *Memphis & L. R. Rd. Co.* v. *Organ,* 67 Ark. 84; Wood on Limitations, § 271, pp. 695-6 and cases cited; 1 Cyc. 1006." This rule is followed generally in other states which, like Arkansas, have no statute making color of title a necessary requirement to the establishment of title to improved lands by adverse possession. 2 C. J. S., Adverse Possession, § 132, p. 698. The deed from Hemingway to defendant was defective in describing the lands, but it was the intention of the

grantor to convey the lands which he had rented to tenants for 20 years and possession of these lands was transferred to defendant at the time of the conveyance. It was, therefore, permissible for defendant to tack his possession to that of Hemingway in order to complete his title by adverse possession.

It is next insisted that the trial court erroneously admitted in evidence a map of the lands in controversy. This map, or sketch, was drawn by counsel for defendant and only purported to portray approximate distances and location of the land lines and the two branches of the creek which partly enclose the property. A witness who was thoroughly familiar with the lands testified that the map constituted a fair representation of the property. It is argued that only a map which is based on a survey made by a competent surveyor, showing the exact location and boundaries of the lands, is admissible and that the person making such map is alone qualified to identify and explain it. The map was not introduced as independent evidence, but only for the purpose of enabling the witnesses to explain the approximate locations and surrounding conditions of the property.

In 20 Am. Jur., Evidence, § 739, it is said: "It is a well-established rule, applied in everyday practice in courts, that maps, drawings, and diagrams illustrating the scenes of a transaction and the relative location of objects, if shown to be reasonably accurate and correct, are admissible in evidence, in order to enable the court or jury to understand and apply the established facts to the particular case." See, also, 32 C. J. S., Evidence, § 730. This rule has been generally followed by this court. *Ault* v. *McGaughey,* 173 Ark. 322, 292 S. W. 359; *Day* v. *State,* 185 Ark. 710, 49 S. W. 2d 380; *Pinson* v. *State,* 210 Ark. 56, 194 S. W. 2d 190. In the last case cited we said: "No prejudice resulted from the use made, or from introduction of the rough sketch or plat for the purpose of illustrating a point. Exactness was not claimed, nor was there any contention that distances indicated were sufficiently at variance with actuality to create a prejudice." There was no claim of exactness

in the case at bar and the map was used by counsel on both sides in examining the witnesses, who were thereby enabled to give clearer representations of objects and places than could have been given otherwise. Introduction of the map did not result in prejudicial error.

It is also argued that the court erred in admitting in evidence the deed from W. A. Hemingway to defendant which purported to convey the lands in controversy under a part description. At the time of the introduction of the deed the court stated that the description was defective and that the deed did not constitute color of title. In instruction No. 1 given by the court the jury were again told that the conveyance was too vague and indefinite to transfer a legal title and, therefore, did not constitute color of title to the lands in controversy; and that the burden shifted to defendant to prove title by adverse possession. Under this careful admonition by the trial judge, no prejudice resulted to plaintiffs in the admission of the defective deed.

It is also insisted that payment of taxes for the period of limitation is a condition precedent to a claim of title by adverse possession when made by a party without color of title. The county tax records showed that defendant and those under whom he claimed paid taxes on 10.08 acres under a part description for the years 1938 to 1945, inclusive, while plaintiffs paid taxes on 38 acres under a part description in the same 40-acre tract during the same period. Under our decisions neither payment of taxes nor color of title is essential to establish a claim of title to improved and enclosed lands by adverse possession where the claimant and his predecessors are in actual possession. *Hargis* v. *Lawrence,* 135 Ark. 321, 204 S. W. 755; *Culver* v. *Gillian,* 160 Ark. 397, 254 S. W. 681.

The trial judge fully and correctly instructed the jury on all issues. We find no prejudicial error and the judgment is affirmed.