SMITH *v.* STATE.

4654                                      238 S. W. 2d 649

Opinion delivered April 9, 1951.

Rehearing denied May 7, 1951.

726

*John C. Sheffield,* for appellant.

*Ike Murry,* Attorney General and *Jeff Duty,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellant, Aubrey Smith, was convicted of murder in the first degree in the killing of Ray Campbell and his punishment fixed by the jury at death.

The appellant, Aubrey Smith, and Peter Dorsey are negro residents of St. Francis County, Arkansas. On the night of August 2, 1950, they stole a cow and calf from Dorsey's neighbor, Tom Norsworthy, and brought the animals to North Little Rock, Arkansas, in the trailer of appellant's automobile. In attempting to sell the stolen cattle the next morning at the North Little Rock Stock Yards, one of the men gave a fictitious name and their actions aroused the suspicions of the manager of the stockyards who called the Pulaski Sheriff's Department. Following an investigation by Pulaski County officers, appellant and Dorsey were taken into custody and officers in St. Francis County were notified.

In response to a call from the Pulaski County Sheriff, Otis Tatum and Ray Campbell, deputy sheriffs of St. Francis County, drove to Little Rock arriving about 6 p. m., August 3rd. Appellant and Dorsey were turned over to the St. Francis County officers. On the return trip to Forrest City the officers stopped about twenty minutes at a roadside cafe on the outskirts of North Little Rock where they ate sandwiches while appellant and Dorsey remained in the back seat of the car. At that time appellant and Dorsey had some discussion about escaping from the officers. On resuming the journey to Forrest City the two officers were riding in the front seat of the two-door sedan driven by Tatum and each carried a pistol in a short strapless holster on his right side. Appellant was riding on the left side of the back seat with Dorsey to his right and appellant's right hand was handcuffed to Dorsey's left hand.

The evidence on behalf of the state is that the group had reached a point on Highway 70 about seventeen miles from Forrest City when appellant, with his left hand, and Dorsey, with his right hand, simultaneously reached for and took the two officers' guns. Appellant procured Tatum's gun and shot the latter in the left

shoulder as he brought the speeding car to a stop. In the ensuing melee officer Campbell was shot in the head and right chest and died almost instantly. Tatum was shot twice, one of the bullets being later removed by a physician and the other bullet was still lodged in his back at the time of the trial.

A bullet found on the floor between the car seats after the shooting with human tissue and blood on it was identified by a ballistics expert as having been fired from Tatum's gun. The bullet that entered Campbell's chest came out about the collar bone. Campbell's dead body was lying across Tatum who was slumped in the driver's seat when he regained consciousness. Tatum succeeded in opening the left door of the car and fell out on the concrete highway. When passing motorists failed to stop, he "threw himself in front of the cars" and a motorist stopped and an ambulance was summoned.

After the shooting appellant and Dorsey fled with the officers' guns and succeeded in removing the handcuffs. The next day they stopped at a house to get a man to take them to Marianna. Dorsey was there apprehended, but appellant again fled. When appellant was about to be captured on the morning of August 5, he shot himself twice, the first shot grazing and the second shot entering his chest. He was taken to University Hospital in Little Rock for treatment. While in the hospital on August 7, appellant gave and signed a written statement to officers describing the shooting and subsequent events. The statement was introduced at the trial without objection.

At the trial appellant gave testimony relative to the shooting not materially different from that related in the written statement. However, he testified at the trial that, while being held in the Pulaski County jail on August 3rd, the Pulaski County officers and Tatum subjected him to severe beating with their fists and a boat paddle, "stomped" on his legs and burned his hair with matches; that he related the burning and beating to the officers who took his statement at the hospital, but the latter refused to incorporate this in the written state-

ment. This was denied by Tatum and the officers who took the statement from appellant. A physician who examined appellant shortly after his capture found no evidence of beatings or burns. Appellant also testified that on the return trip to Forrest City, Campbell threatened to beat appellant and Dorsey, but this was also denied by Tatum.

Appellant was charged with murder in the first degree by information filed in the St. Francis Circuit Court. On September 22, 1950, he applied for a change of venue from St. Francis County on the ground that the inhabitants of the county were so prejudiced against him that he could not obtain a fair and impartial trial therein. This application was granted and the cause ordered removed to the circuit court of Phillips County, Arkansas, where the case proceeded to trial on November 20, 1950.

Appellant first contends that error was committed in the trial court's refusal to quash the information. Under the procedure authorized by Amendment 21 to our State Constitution appellant was tried upon an information filed by the prosecuting attorney instead of an indictment by a grand jury. It is argued that this procedure is violative of appellant's rights under the 5th and 14th Amendments to the Constitution of the United States. We have rejected this contention in several cases. *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131; *Smith, et al.* v. *State,* 194 Ark. 1041, 110 S. W. 2d 24; *Higdon* v. *State,* 213 Ark. 881, 213 S. W. 2d 621; *Brown* v. *State,* 213 Ark. 989, 214 S. W. 2d 240. The same result was reached in the recent case of *Washington* v. *State,* 213 Ark. 218, 210 S. W. 2d 307, which was appealed to the United States Supreme Court and certiorari denied in *Washington* v. *State,* 335 U. S. 884, 69 S. Ct. 232, 93 L. Ed. 423. In that case we said: "The United States Supreme Court has repeatedly held that a State can—if it so desires—provide for a prosecution by information instead of by indictment. Some of these cases are *Hurtado* v. *California,* 110 U. S. 516, 28 L. Ed. 232, 4 S. Ct. 111; *Bolln* v. *Nebraska,* 176 U. S. 83, 44 L. Ed. 382, 20 S. Ct. 287; and *Gaines* v. *Washington,* 277 U. S.

81, 72 L. Ed. 793, 48 S. Ct. 468.'' It follows that the trial court did not err in overruling the motion to quash the information.

Appellant next filed a motion to quash the regular panel of petit jurors and to summon a special venire. The motion alleged that appellant, being charged with murdering a white deputy sheriff, was entitled to have his case heard by an impartial jury; that the regular panel of the jurors selected for the November, 1950, term of court was composed of 22 white jurors and 2 negro jurors. The motion further alleged: ''The defendant further states that the jury commissioners, following a practice of many years standing in Phillips County, Arkansas, have pursued a policy of selecting jurors discriminating against the selection of negroes, because of race. That during the past several years, it has been the practice of the jury commission to select not more than three negroes, and such selection was done deliberately for the purpose of undertaking to meet the charge of discrimination, and that such action has not been done in good faith, but was mere subterfuge.''

Before this motion was ruled on and after final selection of the jury to try the case, appellant filed a motion to quash and set aside the jury as finally selected. This motion alleged that the regular panel was exhausted before completion of the jury; that the court instructed the sheriff to summon a special jury list without regard to race, color or creed and that of the special list summoned and used there were 12 white and 2 negro jurors. It was further alleged: ''That the defendant exhausted all twelve of his peremptory challenges and still there were left on the jury as finally made up 2 negro jurors and 10 white jurors, and that this jury is not an impartial jury within the meaning and spirit of the Constitution of the State of Arkansas and the United States, and under the facts and circumstances as set out in the original motion and brought forward into this motion; that under the facts and circumstances as set out herein, this defendant cannot have a fair and impartial

trial by a fair and impartial jury as guaranteed to him as above stated."

The two motions were heard together upon the testimony of one of the jury commissioners and the following stipulations: "The Court: It is agreed by and between counsel for the State of Arkansas and counsel for the defendant, Aubrey Smith, that the records in the Circuit Clerk's office of Phillips County, Arkansas, do disclose that there have been negroes upon the regular panels or jury lists for the regular terms of the Circuit Court of Phillips County, Arkansas, for the past ten years, that at several terms there was only one negro on the list; that at several terms there were two negroes on the list, or panels, and that at least one term three negroes were on the panels, the regular panels; and that at the present term there are two negroes on the regular list of petit jurors.

"It is agreed by and between counsel for the State of Arkansas and counsel for the defendant, Aubrey Smith, that the present panels of petit jurors were selected from the list of electors which paid their poll taxes before October 1, 1949, and that the regular term of court met and said jurors were empaneled after October 1, 1950, and that each member of the petit jury was examined under oath and asked if he possessed the new, or current, poll tax receipt before he was sworn in as a regular juror.

"Mr. Sheffield: It is agreed that after the regular panel was selected and during the current term of the Circuit Court a number of the regular panel have been excused, at their request, and that vacancies have been filled by the Court from the list of voters for 1950, that is, those who have paid their poll taxes between October 1, 1949, and October 1, 1950, and that the poll tax list of voters for 1950 shows that there were 5,144 white voters and 2,616 negro voters; Whereas, the tax books for the period immediately preceding that showed 1,477 negro voters and 3,200 white voters."

C. E. Mayer, one of the three jury commissioners who selected the jury panels for the November, 1950,

term of court, testified that the commissioners made their selections from the current list of qualified electors containing the names of 3,200 white electors and 1,477 negro electors; that 22 white electors and 2 negro electors were placed on the regular panel of petit jurors and 12 white electors on the list of alternates; that the selections were made in accordance with the court's instructions to select fair-minded, intelligent people qualified to weigh problems arising in law suits; that the selections were made without regard to race, creed or color; that the commissioners considered at least three other Negroes who were deemed qualified but who were not selected because one was an undertaker, another a ginner and farmer who was busy in the cotton ginning season, and the commissioners failed to find the address of the third elector; that there was no discussion among the commissioners to the effect that the number of negro jurors should be limited; that the court instructed them to include Negroes in their selections without indicating any certain number; that most of the negro electors qualified for jury service were of the professional type and their number comparatively small; and that the 1940 population of Phillips County was about 63 per cent negro and 37 per cent white. There was no evidence of the percentage of white and colored population for 1950, probably because such census figures were not available at the time of trial.

It was alleged in the motions to quash and is earnestly argued that the trial court's action in overruling the motions to quash the regular jury panel, and the jury as finally selected, is violative of appellant's right to an impartial jury under Amendments 5, 6 and 14 of the Constitution of the United States and §§ 3 and 10 of Article II of the Constitution of Arkansas.

It is observed from the stipulation that there has been a systematic inclusion rather than exclusion of Negroes by the commissioners in selecting the jury panels in Phillips County for the past ten years. The facts in this case in reference to the ratio of white electors to negro electors are similar to those in *Washington* v.

*State, supra.* In that case no Negroes had been selected as members of the petit jury panels in Jefferson County for thirty years until an adjourned term of court held shortly before the regular term at which the defendant was tried. Three Negroes were placed on the regular panel as alternates for the term at which Washington was tried. In answer to the same argument urged by appellant in the case at bar, we quoted the following language from the opinion in *Akins* v. *Texas,* 325 U. S. 398, 89 L. Ed. 1692, 65 S. Ct. 1276: "Petitioner's sole objection to the grand jury is that 'the commissioners deliberately, intentionally and purposely limited the number of the Negro race that should be selected on said grand jury panel to one member.' Fairness in selection has never been held to require proportional representation of races upon a jury. *Virginia* v. *Rives,* 100 U. S. 313, 25 L. Ed. 667; *Thomas* v. *Texas,* 212 U. S. 278, 53 L. Ed. 512, 29 S. Ct. 393. Purposeful discrimination is not sustained by a showing that on a single grand jury the number of members of one race is less than that race's proportion of the eligible individuals. The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection. Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination 'in the selection of jurors on racial grounds.' *Hill* v. *Texas, supra,* (316 U. S. 404, 86 L. Ed. 1559, 62 S. Ct. 1159). Our directions that indictments be quashed when Negroes, although numerous in the community, were excluded from grand jury lists have been based on the theory that their continual exclusion indicated discrimination and not on the theory that racial groups must be recognized. *Norris* v. *Alabama,* 294 U. S. 587, 79 L. Ed. 1074, 55 S. Ct. 579; *Hill* v. *Texas,* 316 U. S. 400, 86 L. Ed. 1559, 62 S. Ct. 1159; and *Smith* v. *Texas,* 311 U. S. 128, 85 L. Ed. 84, 61 S. Ct. 164, 211, *supra.* The mere fact of inequality in the number selected does not in itself show discrimination."

The facts in the instant case are clearly distinguishable from those in the case of *Patton* v. *Mississippi*, 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76, where systematic exclusion had been practiced for thirty years and there were no Negroes on the venires for the term at which the defendant was tried. In § 11 of an annotation to the Patton case found in 1 A. L. R. 2d 1291, numerous cases, federal and state, are digested which follow the holding in *Akin* v. *Texas, supra*. Many of these cases involve factual matters similar to those in the case at bar and uniformly hold that the fact that there was not an exact mathematical ratio or balance between qualified members of different races or classes in the selection of a jury list is not proof, in itself, of discrimination.

The petit juror occupies a high office in our system of jurisprudence. The quality of his decisions in matters involving rights of property, liberty and life itself is of gravest concern to his fellow men and the well-being of society in general. The mere fact that a person is a qualified elector does not *ipso facto* render him eligible for jury service in Arkansas. In making up the jury lists our statutes require the commissioners to select "persons of good character, of approved integrity, sound judgment and reasonable information." Ark. Stats. §§ 39-206, 39-208. The commissioners are under oath to refrain from selecting any person as a juryman whom they believe unfit and not qualified. Ark. Stats. § 39-201. Although they may be eligible, all persons over 65 years of age and many others who are members of certain occupations and professions, including undertakers, are exempt from jury service. Ark. Stats., §§ 39-104, 39-114.

We cannot agree with counsel's contention that the testimony of Commissioner Mayer discloses that discrimination was actually practiced in violation of the rights of appellant. The witness gave frank and unevasive answers to all questions. Viewed as a whole, his testimony reflects an honest and sincere effort on the part of the jury commissioners to select qualified jurors without any showing of bad faith or design to limit the selection of, or discriminate against, persons of appellant's race. In our opinion his testimony tends to sup-

port his denial that racial discrimination was practiced in making the selections. On the basis of this testimony and the stipulations entered into at the hearing, we conclude that no error was committed in overruling appellant's separate motions to quash the jury panels.

Appellant next contends that error was committed by the trial court in modifying his requested instruction No. 1. The instruction as requested reads: ''In this case, the accused says that when he made the statement which has been introduced in this case as his signed confession, that he made other statements as a part of the confession which the officers taking the statement would not incorporate into the written statement. You are instructed that the law is that if a defendant makes a confession, that the statements made by him in explanation of the crime, or other statements made by him at the time appearing favorable to him, and intended by him to be a part of the confession, must all be included in the confession introduced as evidence. In other words, the confession in its entirety must be offered, if it is to be considered by you as a confession, and if only that portion of the statement given by the accused which is adverse to him is incorporated, leaving out that which might appear favorable to him, then it is your duty to disregard the entire confession offered by the State in evidence.'' The court gave the instruction as modified by substituting the following in lieu of the last sentence of the requested instruction: ''So if you find that the defendant made certain statements at the time which were not included in the written confession, you shall consider them as a part of the confession offered in evidence, even though such statements appear favorable to the defendant.''

As previously indicated, appellant made no objection to the introduction of the confession. At the time of its introduction there was no suggestion that it was not freely and voluntarily made, or that it did not contain the entire statement of appellant, and it was unnecessary that the court hear preliminary testimony in chambers prior to admission. *Burton* v. *State,* 204 Ark.

548, 163 S. W. 2d 160. The instruction as requested was misleading in that the jury could have readily concluded from the language used that they were bound to accept as true the statement of appellant that he made certain statements which were not incorporated in the written confession. This was a highly disputed question of fact for the jury's determination, which was made crystal clear by the court's modification. The jury were told in the second sentence of the instruction that the entire statements must have been included in the confession in accordance with the decision in *Williams v. State*, 69 Ark. 599, 65 S. W. 103, relied on by appellant. All of the matters which appellant claimed were omitted from his written statement are contained in his testimony. It was within the province of the jury to determine the truth or falsity of all or any part of the evidence, including the confession. *Smith v. State*, 216 Ark. 1, 223 S. W. 2d 1011. We find no error in the modification of the requested instruction.

Although not brought forward in the motion for new trial, appellant also objected to the court's instruction on "flight" for the reason "that said instruction is abstract and because the declaration of law, as given, has no application to the facts developed in this case." The instruction told the jury that if they found that defendant fled from the scene of the shooting for the purpose of avoiding arrest and trial, they could consider such fact along with all the other facts and circumstances in determining guilt or innocence. We have held that flight of the accused is admissible as a circumstance in corroboration of evidence tending to establish guilt. *Stevens v. State*, 143 Ark. 618, 221 S. W. 186. There was ample evidence of flight in the case at bar and the instruction is not open to the objection urged against it.

The final insistence for reversal is covered by the first three and the eighth assignments in the motion for new trial which challenge the sufficiency of the evidence to support the verdict. It is argued that there is no substantial evidence to establish appellant's guilt of any degree of homicide higher than manslaughter and that

the testimony on behalf of the state is so inconsistent with certain physical facts as to be unworthy of belief. In this connection great stress is laid on testimony relating to a shirt discarded by appellant shortly after leaving the scene of the shooting. This shirt was found by officers the next day, but was not offered in evidence by the state. Appellant introduced the shirt in evidence and testified that the blood thereon came from his mouth as the result of beatings administered by officers at the Pulaski County Jail. He further testified that his companion tore the shirt from his body shortly after they left the scene of the shooting because the white color of the shirt might more readily lead to their detection. But the jury could have reasonably concluded that the shirt was discarded because it was stained with the blood of the slain officer or his companion. The distinction between principals and accessories before the fact in felony cases has been abolished in this state and all accessories before the fact are deemed principals and punished as such. Ark. Stats. § 41-118. In testing the sufficiency of the evidence, we consider it in the light most favorable to the state. When so considered, the jury was warranted in concluding that appellant willfully shot and killed the deceased, Ray Campbell, after deliberation and premeditation and with malice aforethought, or, that if he did not actually fire the fatal shot, he was present aiding and abetting his companion in the commission of such felonious act.

We find no prejudicial error in the record and the judgment is affirmed.