ATKINSON *v.* STATE.

4769                           267 S. W. 2d 304

Opinion delivered April 19, 1954.

[Rehearing denied May 17, 1954.]

*Reinberger & Eilbott,* for appellant.

*Tom Gentry,* Attorney General, *Thorp Thomas,* Assistant Attorney General, for appellee.

ROBINSON, J. Appellant Luther Atkinson was charged with murder in the first degree by shooting and killing A. B. Martin on the 28th day of June, 1953, and convicted of voluntary manslaughter. On appeal he contends the evidence is not sufficient to sustain the verdict; that the court erred in over-ruling a motion for a continuance; and that there was error in permitting the clothes worn by the deceased at the time he was shot to be introduced in evidence.

The cause came on for trial November 18, 1953. On that day defendant filed a motion for a continuance alleging his power of reasoning had been impaired and he was therefore in no condition to stand trial or properly defend himself. In support of his motion he filed a letter from a Memphis physician who specializes in neuro-psychiatry expressing his opinion that the defendant was

in no condition to go on trial. The defendant had been given a mental examination by doctors at the Arkansas State Hospital, and the report from that institution filed September 10, 1953, is to the effect that the defendant was mentally competent at the time of the killing and at the time of the examination.

A motion for a continuance rests to a large extent in the sound discretion of the trial court. *Burford* v. *State*, 184 Ark. 193, 41 S. W. 2d 751; *Perkins* v. *State*, 217 Ark. 252, 230 S. W. 2d 1. Here we can not say the trial court abused its discretion in over-ruling the motion for a continuance.

The evidence is sufficient to sustain the conviction. Appellant Atkinson had gone with Ilena Stanley for several years, but a few weeks prior to the homicide they had quit going together. On the night of the tragedy, Mrs. Stanley was entertaining in her home a lady friend and two men, Fred Mayberry and A. B. Martin. Mr. Atkinson, the appellant, called Mrs. Stanley on the phone; there is a conflict in the testimony as to what was said, but in any event Mrs. Stanley locked the kitchen door leading out to the back yard. It appears that at this point she then went into a bedroom and lay down across the bed. Martin made the remark that it was hot; that he was not afraid of anyone; and unlocked the back door and opened it. A little later the guests heard dogs barking, and Mayberry went out the front door to see about his car and to answer a call of nature, so he testified. Martin went out the back door to see what caused the dogs to bark; apparently at that time he was armed with a .32 caliber pistol belonging to Mayberry. Atkinson had driven his car to an alley behind the Stanley home, and arming himself with a revolver, climbed over the back fence of the Stanley property and approached the house. When near the house, he met Martin and the shooting started. Martin was struck several times; two of the bullets were recovered from his body and identified by a ballistics expert as having been fired from a .38 caliber revolver belonging to Atkinson and found on the ground at the scene of the shooting.

Although Atkinson says he fired only a couple of shots from a .45 caliber revolver and that he knows neither of them struck Martin, the evidence is sufficient to support a finding that he was shooting his .38 caliber revolver. Evidently Martin fired several shots from the .32 caliber pistol at Atkinson, wounding him in the hand; but when arrested some time later in his hotel room, Atkinson was suffering not only from a hand wound but from a gunshot wound in the head. However, 3 pistol shots were fired by Atkinson while the officers were seeking to gain admission to his room; the evidence is overwhelming that the head wound was self-inflicted at that time.

When all is said and done, the facts remain that Atkinson armed himself with a deadly weapon and went out to Mrs. Stanley's home at a time she was entertaining guests, but instead of going to the front door he went up the alley; and notwithstanding he is a man 62 years of age, climbed over the back fence and approached the house. When Martin came out the back door to see what was making the dogs bark, Atkinson shot him 5 or 6 times, Martin dying from the effects of the wounds a short time later. The evidence would sustain a conviction for a much higher degree of homicide than voluntary manslaughter.

As to the introduction in evidence of the clothes worn by Martin at the time he was shot, they were properly identified and introduced for the purpose of showing the location of the bullet holes. However, they had been washed since being removed from the body. Pate v. State, 152 Ark. 553, 239 S. W. 27, is directly in point and it was there held: "Washing did not change the character of the garments, and they were admissible to show the location of the wounds." And in Cross v. State, 200 Ark. 1165, 143 S. W. 2d 530, it is said: "Where the changed condition of clothing worn by deceased when killed does not prevent them from tending to prove or disprove an issue in the case, then it is proper to permit the clothes to be introduced in evidence."

Finding no error, the judgment is affirmed.