Thomas DUNN and George WHISENHUNT *v.*
STATE of Arkansas

CR 74-4                                  508 S.W. 2d 555

Opinion delivered May 6, 1974

*James E. Davis,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings, Jr.,* Asst.
Atty. Gen., for appellee.

J. FRED JONES, Justice. Thomas Dunn and George
Whisenhunt were convicted of robbery and sentenced to 15
years each in the Arkansas Department of Correction. On
appeal to this court they contend that the state's witness,
Steve Roberts, was an accomplice whose testimony was legal-
ly insufficient to sustain their conviction since Roberts'
testimony was not corroborated by other evidence tending to
connect them with the commission of the crime. Dunn and
Whisenhunt also contend that the trial court erred in refusing

to grant a mistrial when the prosecuting attorney elicited testimony from Steve Roberts regarding previous crimes committed by Dunn.

The state seems to recognize its error in eliciting testimony from the prosecuting witness regarding previous crimes committed by Thomas Dunn, but the state contends that the prejudicial effect of such error was cured by admonition to the jury. We conclude that the judgment must be reversed under the appellants' first contention so we find it unnecessary to further discuss the second assignment since the state recognizes the error involved and it's not likely to arise again in the event of a new trial

In connection with the appellants' first assignment, Ark. Stat. Ann. § 43-2116 (Repl. 1964) provides as follows:

"A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. Provided, That in misdemeanor cases a conviction may be had upon the testimony of an accomplice."

Our rather recent application of the above statute to facts very similar to those in the case at bar was in the case of *Moore* v. *State*, 251 Ark. 436, 472 S.W.2d 940. In that case we reiterated the rule announced in *Pitts* v. *State*, 247 Ark. 434, 446 S.W.2d 222, as follows:

" 'There is no dispute about the applicable rules of law. Under the statute a conviction for a felony cannot be had upon the testimony of an accomplice 'unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof' Ark. Stat. Ann. § 43-2116 (Repl. 1964). In construing the statute we have held that the test of the sufficiency of the corroboration is whether, 'if the testimony of the accomplice is eliminated from the case,' the other evidence establishes the required connection of the accused with the commission of the offense. *Froman* v. *State*, 232 Ark.

697, 339 S.W.2d 601 (1960). Corroborating evidence which merely raises a suspicion of guilt is not enough. *Underwood* v. *State,* 205 Ark. 864, 171 S.W.2d 304 (1934).' "

However, in the still later case of *King* v. *State,* 254 Ark 509, 494 S.W.2d 476, we discussed the application of the statute and there said:

"By its own language, the statute only requires that there be corroboration by evidence *tending* to connect the defendant with the commission of the offense and that this evidence go *beyond* a showing that the crime was committed and the circumstances thereof. We have, therefore, consistently held that the corroborating evidence need not be sufficient in and of itself to sustain a conviction, but it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *Lauderdale* v. *State,* 233 Ark. 96, 343 S.W.2d 422; *Shipp* v. *State,* 241 Ark. 120, 406 S.W.2d 361; *Fleeman* v. *State,* 204 Ark. 772, 165 S.W.2d 62."

In the case at bar the victim of the robbery, Mr. Ed Corley, had closed his store on Halloween night, October 31, 1972, and as he started to leave the store premises with the day's receipts about 9:00 p.m., he was assaulted from behind in the dark as he prepared to enter his automobile and his money was taken from him. Mr. Corley did not see who attacked him and the money, or the bag in which it was contained, was never recovered. Steve Roberts· and the appellants Thomas Dunn and George Whisenhunt were subsequently arrested and charged with the robbery. Steve Roberts entered a plea of guilty and testified as a state's witness at the trial of Dunn and Whisenhunt.

Roberts testified in detail as to his participation with Dunn and Whisenhunt in the robbery of Mr. Corley, according to plans he said were devised by Dunn and Whisenhunt as the three were riding around town (De Queen, Arkansas) in Whisenhunt's red Mustang automobile. Although he testified that he was intimidated by Dunn and Whisenhunt into participating in the robbery after, and because, he had heard their plans for its execution, he said he participated

with Dunn in the actual robbery and cut his hand on Mr. Corley's glasses when he actually struck him. He said he and Dunn pulled lady's stockings over their heads and first attempted to go in the back door of Corley's store before he closed it. He said they found the back door locked so they hid beside the building until Mr. Corley came out of his store, at which time they both struck Mr. Corley and took his money. He then related how he and Dunn ran back to the parked car in which Whisenhunt was waiting. He said that after the robbery they drove to Whisenhunt's apartment where they divided the money, after which they went to Julius' place (a tavern or roadhouse) just across the state line in Oklahoma. He said they made up alibis as they drove to Oklahoma; one of the planned alibis being that Dunn would borrow some money in Oklahoma as an explanation for any excessive amount of money that might be observed or found in his possession. There is no question that Roberts was an accomplice to any crime Dunn and Whisenhunt may have committed in this case, but the record is simply void of any corroborating evidence of sufficient quality to sustain their conviction.

Mrs. Thelma Corley was the first witness called by the state. She testified that her father-in-law, Ed Corley, operated his grocery store about four blocks from her home. She said Mr. Corley called her by phone following the robbery; that she went to the grocery store where Mr. Corley related to her what had happened. She testified as to the approximate amount of money taken but denied any knowledge whatever as to the identity of the person or persons who might have committed the robbery.

Mr. Jake Alexander testified that he went to the Corley Grocery store on the evening in question and found that Mr. Corley had been injured. He described Mr. Corley's condition and his efforts to obtain medical assistance for Mr. Corley. Dr. O. D. Brown, Jr. testified as to Mr. Corley's injuries, including the appearance that he had been struck on the head with a hard blunt instrument. Mrs. Frances Westbrook testified that she drove by the Corley Grocery store on the night in question and observed the other people trying to help Mr. Corley into a pickup truck, and that she stopped and assisted them in doing so.

Mr. Corley testified as to closing his store on the night in question after which he walked to his automobile carrying a bag containing the day's receipts. He said someone rushed out of the dark behind him, struck him on the head and face and rendered him unconscious. He said he could definitely say one person struck him but that he did not hear anyone except someone rushing up back of him just before he was struck. Mr. Corley testified that when he regained consciousness, his money bag containing approximately $2,000 was gone. He said that when he regained consciousness following the robbery, he walked back into the store and called his daughter-in-law.

Mr. Carroll Page of the criminal division of the Arkansas state police testified that he assisted Chief of Police Hughes in investigating the robbery. He identified pictures he made of the store and Mr. Corley. Mr. Page testified that he and other officers obtained information that Dunn, Whisenhunt and Roberts might know something about the robbery and that as a result of such information, they were picked up and questioned. He said Roberts admitted his participation in the robbery and involved the other two. Mr. Roberts was next called as a witness for the state and testified as to his own guilt and as to the participation of his two codefendants, as above set out.

Mr. Loit Peek, a logging contractor, testified that he was acquainted with Roberts, Dunn and Whisenhunt. He said Mr. Corley's grocery store was about two blocks from the Parkview Grocery store and as he was leaving the Parkview Grocery about 7:15 or 7:30 on the night in question, he saw Roberts, Dunn and Whisenhunt pass in Whisenhunt's red automobile traveling in the direction of Mr. Corley's store. He said as he left the Parkview Grocery store, he believed the Whisenhunt car drove ahead of him for some distance up a hill in the direction of Corley's Grocery store. He said as he proceeded up the hill in the direction of Corley's Grocery, there were two or three automobiles between him and what he thought was the Whisenhunt automobile, so he was not absolutely sure as to the occupants of the car driving ahead of him, but he definitely identified Roberts, Dunn and Whisenhunt as they passed in front of Parkview Grocery.

Sergeant Kenneth Hendricks with the Arkansas state

police testified that he has been assigned to the De Queen area for about a year and was acquainted with Roberts, Dunn and Whisenhunt. He said he was familiar with the red Ford Mustang automobile owned and driven by Whisenhunt. He said that on Halloween night he was parked and observing traffic at the junction of Highway 41 with U.S. 70 and 71 and saw a red Mustang Ford automobile as it turned left on U.S. 70 headed west from state Highway 41. He said he recognized Thomas Dunn sitting on the righthand side in the front seat of the automobile but did not see anyone else in the automobile well enough to recognize them. He said he did not recall what time in the night this occurred but it was after dark and he would guess that it was somewhere around 8 or 9 o'clock. He said this occurred about 10 minutes before he received a radio message that Mr. Corley had been robbed and taken to the hospital. He said he proceeded to the hospital to interview Mr. Corley and did not search further for the red Mustang automobile and its occupants because it meant nothing to him at the time.

Jerry Wayne Weiner testified that he lived in the same apartment building where George Whisenhunt lived. He said that on Halloween night in October, 1972, he was drunk and went to his apartment about 9:30. He said that in reaching his apartment he walked around the front of an automobile he thought was Whisenhunt's. He said he recalled placing his hand on the hood of the car and remarking to "Gussie" (apparently his wife), "I see 'ole George is home."

Mr. Cecil Lloyd next testified as a witness for the state. He testified that he operates a tavern about a half mile west of the Oklahoma state line. He said Thomas Dunn and George Whisenhunt came to his place on the night in question about 9:45 p.m. He said they played pool for awhile and that Dunn wrote him a $25 check and he cashed it. He said it was understood he was to hold the check and that Dunn would later come by and pick it up or redeem it. This testimony of Lloyd is as close as the state came to producing corroborating evidence tending to connect Dunn and Whisenhunt with the crime. As to making up an alibi, Roberts' exact testimony was as follows:

"After we got out there a little ways, I sat up in the car, and we discussed how we were going to fix an alibi.

Q. What did you talk about in the way of an alibi?

A. Well, Mr. Dunn was suppose to borrow, I think, twenty-five or thirty dollars from Poppy Rod.

Q. Are you talking about Cecil Lloyd known as Poppy Rod?

A. Yes, sir. Said that would be an alibi in case he came up with too much money or something, well, he would say he borrowed it from Mr. Lloyd."

Elbert Hughes, the chief of police for De Queen, identified hat and glasses belonging to Mr. Corley and found near his automobile, but he gave no testimony connecting the appellants with the commission of the crime.

Several witnesses testified for the defendants. They testified that they were at one of the taverns on the Oklahoma side of the state line and observed Roberts, Dunn and Whisenhunt somewhere around 8:30 or 9:00 p.m.

Aside from the testimony of the accomplice Roberts, there is no other testimony at all linking the appellants with the robbery of Mr. Corley. The fact that Dunn and Whisenhunt were seen riding in the same automobile with Roberts, as related under the facts and circumstances of this case, is not sufficient corroboration to sustain their conviction. (See *Moore* v. *State, supra*). We conclude that the judgment must be reversed and this cause remanded for a new trial.

Reversed and remanded.