Larry Bee BLY *v.* STATE of Arkansas

CR 79-108                                    593 S.W. 2d 450

Opinion delivered January 28, 1980
(In Banc)

614

*John M. Bynum* and *Robert E. Irwin,* for appellant.

*Steve Clark,* Atty. Gen., by: *Dennis R. Molock,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was convicted of murder in the first degree and sentenced to life in prison. This was a retrial of the prior conviction of capital felony murder which was reversed by this Court in *Bly* v. *State,* 263 Ark. 138, 562 S.W. 2d 605 (1978). On appeal he alleges 8 points for reversal. We will deal with them in the order of appearance in the brief. The points argued generally deal with lack of corroboration, collateral estoppel, improper offer of evidence, and the introduction of improper evidence. However, we do not find prejudicial error in any of the contentions argued by appellant and therefore affirm the conviction.

Arthur Ed Burns was brutally murdered on October 13, 1976, by means of stab wounds to the heart and having his throat cut. The evidence, except for the testimony of the accomplice, Marty Tumbleson, was circumstantial. The accomplice testified that he was present with the appellant and

the victim at the time of the murder. He described how the three of them got together at a service station in Clarksville about 9:00 or 9:30 p.m. on October 13, 1976, and drove around in a white Chevrolet automobile for some time. He described the actions of the appellant in beating the victim, who was 71 years of age, in the back seat of the car. The victim lost a considerable amount of blood while in the automobile. After driving around looking for wine, they eventually stopped on Lake Dardanelle at a location known as Cabin Creek. Appellant removed the victim from the vehicle and took him behind the automobile where he continued to beat him. Appellant then borrowed the accomplice's knife and stabbed Burns in the heart while he was lying on the ground behind the automobile. Following this, the appellant handed the knife to the accomplice, who was 17 years of age, who stabbed the victim in the chest again. Thereafter appellant instructed him to remove the body from the area and cut Burns' throat, which he did. According to the accomplice, they then drove to a place called Minnow Creek where they washed the blood from the automobile with some type of chemical. Tumbleson and the appellant then drove back to Clarksville and arrived at the South Park Service Station where they purchased gas and cigarettes with $2 they had taken from the victim. Then they went to the Caprice Restaurant where they met Jennifer Tumbleson, the accomplice's sister. Although this witness made some four different statements, some of which were inconsistent, we are reciting only his testimony at the trial. He subsequently entered a plea of guilty to murder in the first degree.

Tumbleson testified that he and the appellant, along with his sister Jennifer, left town in the automobile that night. He went to sleep after they had driven for awhile and when he awoke they were at a roadside park. The following morning they drove into Mississippi where they discarded their clothing, which had bloodstains on them, and threw the knife in the Mississippi River. Thereafter they headed back into Arkansas and the accomplice departed the company of the other two at Hazen, Arkansas, and hitchhiked back to Clarksville.

Roger Holman testified he saw the appellant, the vic-

tim, and the accomplice at the Save Service Station between 9:00 and 9:30 p.m. on October 13, 1976, in a 1964 cream colored automobile. The accomplice joined the appellant and the victim at the station after the two had arrived in the automobile. When they left the station, about 9:30 p.m., the accomplice was driving the vehicle. He had also noticed a knife strapped to the body of the accomplice. His wife, Patricia Holman, testified essentially to the same facts.

Mervin Ferrish operated the Caprice Restaurant in Clarksville. He observed the appellant and Tumbleson at his place of business about 11:15 p.m. on October 13, 1976. The two of them were in a white Chevrolet automobile. Tumbleson called his sister, Jennifer, over to the automobile where appellant and the accomplice were seated. Jennifer was employed by Ferrish at the restaurant. At that time he advanced her $20. Although she was supposed to return to work the next day, it was two or three weeks before she appeared again.

Alan Ferrish testified he worked at the Caprice Service Station on October 13, 1976. He filled a white Chevrolet automobile gas tank for the appellant, Tumbleson and Jennifer shortly after 11:00 p.m. on the same date. He observed the three of them leave in the vehicle.

On October 15, 1976, Chesley Shirrod, a junk dealer in Memphis, purchased a 1964 white Chevrolet automobile from Jennifer and the appellant. He paid the sum of $50 and received a bill of sale after Jennifer exhibited ownership papers to him. Shirrod identified appellant at the trial as the man who was with Jennifer when he purchased the car. He kept the car a week or so and turned it over to a Mr. Goza who was interested in purchasing the vehicle. He testified the vehicle was not altered in any manner while he had it in his possession.

Don Goza testified he took possession of the car from Shirrod about the middle of October, 1976 and took it deer hunting the following day. The car was subsequently confiscated by the Arkansas State Police. He thought the vehicle was picked up by the police a few days after it came into his possession.

Bill Bounds, a member of the Arkansas State Police, investigated some of the events of this crime. He took possession of the automobile in question on November 9, 1976, and had it towed to West Memphis where he examined it in detail for evidence. He noticed some discoloration in the back seat and on the floor board. He took samples of the fabric from the seat and from the floor mat. These samples were marked for identification and turned over to the state toxicologist for laboratory analysis.

Berwin Monroe, Chief Criminologist for the State of Arkansas, testified he analyzed the samples received from Bounds and found traces of human blood in the exhibits, which he identified at the trial.

Doug Stephens, an investigator for the Arkansas State Police, aided in the investigation of this matter. He visited the scene of the crime and obtained pictures of the body and of the surrounding territory before the body was moved. He also drew diagrams or sketches of the area which he admitted were not to scale. His investigation commmenced on October 16, 1976. He described the scene to the jury and exhibited the pictures which were introduced into evidence. He further described the nature of the wounds on the body of the victim.

Sheriff Meek assisted in the investigation and his testimony was essentially the same as that of Doug Stephens.

Rodney Carlton, then State Medical Examiner, performed an autopsy. He found bruises and scratches about the face of the victim. He also described the stab wounds to the chest and the wound to the throat of the victim. It was his feeling the wounds to the chest initiated the victim's death. He further stated the throat wound revealed the trachea, carotid arteries and jugular vein were damaged. He also found the victim's blood alcohol content was 0.19 percent by weight.

I.

THE EVIDENCE IS LEGALLY INSUFFICIENT TO

SUSTAIN THE CONVICTION SINCE TUMBLESON
WAS AN ACCOMPLICE AND HIS TESTIMONY WAS
NOT CORROBORATED BY OTHER EVIDENCE
TENDING TO CONNECT BLY WITH THE COMMIS-
SION OF THE CRIME.

Tumbleson described every detail of the event, includ-
ing the crime scene and the flight. There is no doubt his
testimony alone would support the conviction of the appel-
lant were it not for the rule that a conviction cannot stand
upon the uncorroborated testimony of an accomplice. Ark.
Stat. Ann. § 43-2116 (Repl. 1977). We must examine the
record to see if such corroboration existed in this case. The
corroborating evidence must tend to connect the accused
with the crime and must be independent of the evidence
given by the accomplice. *Froman* v. *State,* 232 Ark. 697, 339
S.W. 2d 601 (1960); *Burnett* v. *State,* 262 Ark. 235, 556 S.W.
2d 653 (1977), cert. denied 435 U.S. 944 (1978). Corroborat-
ing evidence may be circumstantial so long as it is substan-
tial. *Olles* v. *State,* 260 Ark. 571, 542 S.W. 2d 755 (1976). A
test on the sufficiency of corroborating testimony of an ac-
complice is if the accomplice's testimony were eliminated
from the case, would the other testimony establish the com-
mission of the offense and the connection of the accused
therewith. *Froman,* supra. The independent evidence itself
need not be of such substantial character as to support a
conviction without the testimony of the accomplice. *Shipp* v.
*State,* 241 Ark. 120, 406 S.W. 2d 361 (1966); *Gardner* v.
*State,* 263 Ark. 739, 569 S.W. 2d 74 (1978), cert. denied 440
U.S. 911 (1979).

Several witnesses saw the appellant, Tumbleson and
Burns drive away in a 1964 Chevrolet about 9:30 p.m. on the
date of the murder. Other witnesses saw appellant and
Tumbleson return to the same area in a white Chevrolet
about 11:00 p.m. on the same day. The victim was not with
them when they returned. Witnesses also saw the appellant,
Tumbleson and Jennifer drive away from Clarksville shortly
thereafter. Mr Shirrod testified he purchased the car in
Memphis on October 15, 1976. Jennifer Tumbleson had
ownership papers to the vehicle and executed a bill of sale.
This evidence was introduced at the trial. We have held the

flight by an accused is a circumstance to be considered in determining his guilt. *Murphy* v. *State,* 255 Ark. 90, 498 S.W. 2d 884 (1973); *Centeno* v. *State,* 260 Ark. 17, 537 S.W. 2d 368 (1976). The evidence of human blood on the samples taken from the vehicle several days later tend to have some probative value, especially in view of the testimony clearly showing the vehicle had not been tampered with. When the above testimony and evidence is considered we think it tends to substantially connect the appellant with the commission of the offense. *Jones* v. *State,* 254 Ark. 769, 496 S.W. 2d 423 (1973); *Olles,* supra. In this case where the murder weapon had been disposed of in the Mississippi River and there were no direct witnesses to the murder, other than the accomplice and the accused, who refused to testify, there is no way to prove the guilt of the accused other than by circumstantial evidence. We hold circumstantial evidence introduced in this case is substantial and tends to connect the appellant with the offense.

II.

THE DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS THE STATE OF ARKANSAS FROM TRYING BLY FOR FIRST DEGREE MURDER BECAUSE THE JURY AT THE FIRST TRIAL AND A SPECIAL FINDING FOUND SPECIFICALLY THAT BLY DID NOT KILL BURNS.

Appellant urges collateral estoppel should be applied in this case. He contends the finding of the jury, during the mitigation stage of the first trial, that Burns was killed by someone other than the appellant, brings this doctrine into force thereby causing appellant to be immune from prosecution for first degree murder. This argument is based upon the premise that first degree murder was necessarily included in the trial for capital felony murder. Ark. Stat. Ann. §§ 41-106 and 107 (Repl. 1977) relate to this doctrine. § 41-106 relates to prosecution for the same offense, and § 41-107 relates to former prosecution for a different offense. We have the prosecution for a different offense under consideration here. Ark. Stat. Ann. § 41-107 reads:

A former prosecution is an affirmative defense to a

subsequent prosecution for a different offense under the following circumstances.

(1) The former prosecution resulted in an acquittal or in a conviction as set out in section 106 (§ 41-106) and the subsequent prosecution is for:

(a) any offense of which the defendant could have been convicted in the first prosecution; or

(b) an offense based on the same conduct, unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of the offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed, or vacated and which necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.

(3) The former prosecution was terminated under the circumstances described in section 106 (§ 41-106) and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been terminated.

Obviously, the first trial did not result in an acquittal. The charge included the present charge but was not an acquittal of the first degree murder charge by reason of being convicted of capital felony murder. There was not a necessary determination of the appellant's guilt on first degree murder in the finding of his guilt in capital murder. In setting the first conviction aside the appellant is back where he

started. He is presumed innocent of first degree murder when the trial commences just as he was presumed innocent of capital felony murder when his first trial started. Capital felony murder requires the death to have been the result of actions taken during the commission or attempt to commit a felony. First degree murder may be committed in the same manner; however, first degree murder may also be committed only by premeditation and deliberation for the purpose of killing the victim. There is no requirement that first degree murder be the result of actions pertaining to a felony. Ark. Stat. Ann. § 41-1502 (1) (b) (Repl. 1977). The defense of collateral estoppel is not warranted under the facts or the law in this case. In making this determination, we hold that the finding of the jury on mitigation of circumstances has no bearing on the issue of guilt or innocence of the appellant.

### III.

THE OFFER BY THE STATE OF ARKANSAS OF THE TRANSCRIPT OF APPELLANT BLY'S TESTIMONY IN THE FIRST TRIAL, AND THE ENSUING DISCUSSION BEFORE THE BENCH AMOUNTS TO A COMMENT ON THE APPELLANT'S FAILURE TO TESTIFY.

The record shows appellant's motion to exclude his former testimony in the prior trial was granted. Also, the record shows it was out of the hearing of the jury. Without need of citation we state unequivocally this was not prejudicial to the appellant.

### IV.

THE TRIAL COURT ERRED IN PERMITTING THE JURY TO REHEAR A PORTION OF TESTIMONY WITHOUT FIRST DETERMINING WHAT SUCH TESTIMONY WAS.

After deliberating for some time the jury returned and requested to hear parts of Marty Tumbleson's testimony again. Prior to allowing the jury to hear this testimony, the court inquired of the attorneys whether there were any ob-

jections. The entire jury was in the room at this time. Neither the state nor the defense objected to it being heard again by the jury. In fact, both specifically stated they did not object. Obviously, appellant waived any objection he may have had to this procedure. We do not hear matters on appeal for the first time. The issue must be raised at the trial level. *Hughes v. State,* 264 Ark. 723, 574 S.W. 2d 888 (1978).

## V.

THE TRIAL COURT ERRED IN ADMITTING A PORTION OF BLOODSTAINED SEAT COVER IN EVIDENCE WITHOUT PRELIMINARY PROOF TENDING TO SHOW THE CONDITION OF THE SEAT COVER AT THE TIME OF THE CRIME, OR IMMEDIATELY THEREAFTER.

We discuss the facts under Point I as they relate to the description of the stained seat cover which was introduced into evidence. It seems the testimony of the witnesses clearly showed the vehicle was in essentially the same condition as it was when the appellant departed possession of it. Appellant objected to the introduction of the bloodstained fabric because the state failed to show the stain was on it when the appellant last had control of it. Whether the evidence was relevant was the determining factor. Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 401, states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 402 makes all relevant evidence admissible. We think this evidence was relevant as having a tendency to corroborate the testimony of Tumbleson. We have previously allowed bloodstained clothing to be introduced. *Atkinson v. State,* 223 Ark. 538, 267 S.W. 2d 304 (1954). The trial judge did not abuse his discretion in this matter. *Gardner v. State,* supra.

## VI.

THE TRIAL COURT ERRED IN LIFTING THE SE-
QUESTRATION OF THE JURY OVER APPELLANT'S
OBJECTION.

The jury was sequestered the first night of the trial.
Several jurors indicated a second night of sequestration
would cause some hardship to them. Also, the sheriff in-
formed the court it would be virtually impossible to find
adequate quarters for them at that time of day. The trial court
instructed the jury that under no circumstances were they to
discuss the matter with each other nor were they to listen to
news accounts or read the newspapers. They were allowed
to return to their respective homes the second night. The
following morning, when they returned, the court again
questioned them as to whether they had violated his previous
instructions. He went so far as to inquire of each individual
juror as to whether he had abided by the admonition. Under
the circumstances, we do not feel it was prejudicial error to
fail to sequester the jury on the second night, especially in
view of the extent to which the court went to protect the
integrity of the jury. This is a matter that is within the sound
discretion of the trial court and such determination will not
be deemed improper unless there is a showing of abuse of
this discretion. *Hutcherson* v. *State*, 262 Ark. 535, 558 S.W.
2d 156 (1977).

## VII.

THE TRIAL COURT ERRED IN PERMITTING
TESTIMONY BY INVESTIGATOR STEPHENS
CONCERNING THE ALLEGED CRIME SCENE.

We can see no prejudicial error whatsoever in the trial
court allowing Doug Stephens to give a description of the
murder scene. It is also helpful to the jury to have an expla-
nation of the area in order to better understand the testimony
as it is given. Stephens' testimony was the first given and
apparently intended to give the jury an over-all understand-
ing of the geographical territory which would be discussed
during the trial. The drawings which Mr. Stephens intro-

duced were admittedly not drawn to scale. However, there is no indication that anything about either drawing was prejudicial to the appellant. Several witnesses later referred to the drawings during their testimony. Obviously, this was of assistance to the witnesses in offering their testimony and probably aided the jury in understanding what the witness was saying. We view the matter to be governed by our decision in *Pinson* v. *State,* 210 Ark. 56, 194 S.W. 2d 190 (1946); *Howell* v. *Baskins,* 213 Ark. 665, 212 S.W. 2d 353 (1948).

## VIII.

THE STATE FAILED TO PROVE BLY WAS AN HABITUAL OFFENDER UNDER ARK. STAT. ANN. § 41-1002.

One of two prior convictions introduced by the state indicated appellant had received only a 6-month sentence. Appellant objected to this conviction being introduced because it was not shown on the document the offense was a felony. The court made a determination that the challenged conviction was in fact a felony before permitting it to be presented to the jury. The court relied upon a computer printout to determine the offense was a felony. Subsequent examination of the Oregon statute revealed it was in fact a felony. Therefore, the court took a chance in relying upon the printout and it turned out to be correct. We see no prejudice to appellant in this case.

We have examined the record of this trial for potential errors which have not been briefed by the appellant. We do not find any prejudicial errors which were not treated by the appellant in his brief.

Affirmed.

MAYS and HICKMAN, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I would reverse and dismiss the judgment for lack of corroborating evidence.

The majority recites our decisions on corroboration of

an accomplice and then proceeds to disregard them.

The testimony of an accomplice is suspect — usually the accomplice has made a deal to save his own hide in return for testimony against another suspect. The General Assembly has wisely enacted a law that prevents a defendant from being convicted on such testimony alone. Ark. Stat. Ann. § 43-2116 (Repl. 1977).

Our previous cases have strictly enforced this statute. For example, we have held that the accomplice's testimony must be totally eliminated and what remains examined. The question is, will the remaining evidence establish the commission of the offense and tend to connect the accused with the crime. *Froman & Sanders* v. *State,* 232 Ark. 697, 339 S.W. 2d 601 (1960).

In *Green* v. *State,* 265 Ark. 179, 577 S.W. 2d 596 (1979), we held that presence alone at the scene of the crime was not sufficient to corroborate the testimony of an accomplice.

In *Dunn & Whisenhunt* v. *State,* 256 Ark. 508, 508 S.W. 2d 555 (1974), there was evidence that the defendants had been seen riding around with the other alleged accomplice to a robbery shortly before the crime. Moreover, in *Dunn & Whisenhunt,* a witness even corroborated the accomplice's story that the defendants attempted to establish an alibi by cashing a check at a tavern. We held all this was not enough. Here the majority, relying entirely on the testimony of the accomplice Tumbleson, recites the facts in detail. But totally disregarding Tumbleson's testimony, what can we find to connect Bly to the crime of murder in the first degree? He was seen about 9:30 that night in a car with Tumbleson and the victim. Later that night he and Tumbleson were seen alone in a car together. The majority says there is evidence of flight. What flight? The evidence is that the defendant's girlfriend sold a car in Memphis and that Bly was there and took the money. That is not flight. *Smith* v. *State,* 218 Ark. 725, 238 S.W. 2d 649 (1951). That is somebody selling a car in Memphis, Tennessee.

It is argued that blood drops were found in the back seat. So what?

It really should not make any difference if Bly was present at the scene of a crime which occurred several miles from where Bly was observed in a vehicle.

While the testimony of the accomplice may seem believable and be detailed, it alone carries no weight. We require additional facts. There are simply not enough in this case.

Where is the evidence that tends to show that Bly killed Ed Burns?

The defendant is presumed innocent until proven guilty; the evidence in this case is just as consistent with Bly's innocence as with his guilt. He was simply seen in a vehicle with the deceased and Tumbleson before the crime and in a vehicle with Tumbleson after the crime. He was not placed at the scene. There is no evidence whatsoever that Bly killed or participated in the killing of Burns.

This is the second trial. At the first trial Bly testified; so did his girlfriend and his mother-in-law. There was evidence of flight in that case, and based on that record we found that there was sufficient evidence to support a conviction of some sort of homicide. That evidence was not present at this trial and we cannot consider it.

The majority has created a precedent which flies in the face of all of our decisions regarding the testimony of an accomplice.

MAYS, J., joins in this dissent.