Johnny STEPHENS and Kenneth BEATTY *v.* STATE of
Arkansas

CA CR 85-8                                    693 S.W.2d 64

Court of Appeals of Arkansas
Division II
Opinion delivered July 10, 1985

354

Smith, Smith & Hubbell, by: *Mark D. Drake*, for appellant Johnny Stephens.

*Gibson Law Office*, by: *Charles S. Gibson*, for appellant Kenneth Beatty.

*Steve Clark*, Att'y Gen., by: *Alice Ann Burns*, Deputy Att'y Gen., for appellee.

TOM GLAZE, Judge. Appellants, Johnny Stephens and Kenneth Beatty, appeal from their convictions for aggravated robbery and manslaughter. Both were sentenced as habitual offenders.

On 23 November 1983, five men were involved in an armed robbery, during which one of the robbers was killed. Two defendants pled guilty, and later testified for the State at appellants' joint trial by jury. Appellants were both charged with acting as lookouts during the robbery. In this appeal, Stephens contends that the trial court erred in allowing the introduction of evidence of three prior convictions under the habitual offender statute and in allowing into evidence a photograph of him. Appellants Stephens and Beatty both contend that the trial court erred in not directing a verdict of acquittal. We will consider the points in order.

■ The habitual offender provision in effect at the time the crimes were committed, Ark. Stat. Ann. § 41-1001 (Supp. 1983), provides: (1) a defendant who is convicted of a felony committed after June 30, 1983, and who has previously been convicted of more than one (1) but less than four (4) felonies, or who has been found guilty of more than one (1) but less than four (4) felonies, may be sentenced to an extended term of imprisonment . . ."

■ Stephens argues that the State, which offered evidence of three prior felony convictions, should have been limited to

proving only two previous convictions because, in its amended information, the State charged Stephens with having been previously convicted of *two (2)* or more felonies (emphasis ours). In support of his contention, Stephens cites *Clinkscale* v. *State*, 269 Ark. 324, 602 S.W.2d 618 (1980). We believe, however, that *Reed* v. *State*, 282 Ark. 492, 669 S.W.2d 192 (1984) is controlling. In *Reed*, the defendant was charged with being previously convicted of more than two felonies. The court held that, where the habitual offender statute provided for an enhanced term of imprisonment when there were more than two previous felonies, the State, in using the language "more than two," clearly expressed its intent to show at least three previous convictions. The court went on to say that the phrase "two or more" implies that the State intends to introduce a minimum of two convictions.

Stephens alleged no surprise nor did he request a bill of particulars on the habitual offender charge. We believe the amended information, alleging two or more previous felony convictions, put Stephens on notice that he would have to defend at least two convictions, and the State properly was permitted to introduce evidence of three convictions.

Although Stephens did not object below, and made only a passing reference to it in his appeal, the trial judge did give an erroneous instruction as to the range of punishment for manslaughter, a Class C felony. The proper range is six to twenty rather than eight to twenty years as the judge stated. Stephens was sentenced to eight years on the manslaughter conviction, and twenty years on the aggravated robbery charge, sentences to run concurrently. Because the sentences are concurrent and are both within the statutory range, we find no prejudicial error. *See Hensley* v. *United States*, 156 F.2d 675 (8th Cir. 1946) (prison sentence of ten years was made to run concurrently with twenty-five year sentence imposed under another indictment; fact that ten-year sentence was excessive was not prejudicial to defendant if twenty-five year sentence was not void).

Appellant Stephens' second point for reversal is that the trial court erred in admitting into evidence, over his objection, a photograph. The photograph was taken after Stephens' arrest in California, which occurred about three weeks after the crime. On appeal, Stephens contends the photograph is irrelevant. We

disagree.

At trial, the State introduced testimony of Anthony King who lives near the Birch residence, where the robbery took place. King testified that soon after hearing a shot, he saw three people run down the street and jump into a car. He described one of the persons as tall and having long hair. The mug shot showed Stephens with long hair, a mustache, and a beard.

Appellant Stephens argues not only that the photograph was irrelevant, but also that it was highly prejudicial because of his unsightly condition. However, even inflammatory photographs are admissible if they tend to shed light on any issue, provide the jury with a better understanding of the testimony, or corroborate testimony. *Perry* v. *State*, 255 Ark. 378, 500 S.W.2d 387 (1973). The introduction of photographic evidence is a matter within the discretion of the trial judge, *Perry, id.*, and we will not reverse a trial court's ruling with respect to relevance absent an abuse of discretion. *James* v. *State*, 11 Ark. App. 1, 665 S.W.2d 883 (1984).

Stephens' last point, and appellant Beatty's sole point for reversal, is that the trial court erred in not directing a verdict of acquittal. They contend that the State's evidence was insufficient to corroborate the testimony of the accomplices.

A conviction cannot be had in any case of felony upon the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark. Stat. Ann. § 43-2116 (Repl. 1977). Our Court in *Paladino* v. *State*, 2 Ark. App. 234, 236, 619 S.W.2d 693, 694 (1981), stated the standard as follows:

> By its own language, the statute only requires that there be corroboration by evidence *tending* to connect the defendant with the commission of the offense and that this evidence go *beyond* a showing that the crime was committed and the circumstances thereof. We have, therefore, consistently held that the corroborating evidence need not be sufficient in and of itself to sustain a conviction, but it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. (quoting *King* v. *State*, 254

Ark. 509, 494 S.W.2d 476 (1973), and *Dunn & Whisenhunt* v. *State*, 256 Ark. 508, 508 S.W.2d 555 (1974)).

At trial, evidence regarding the criminal episode was supplied by accomplices Bill McCarty and Sammy White, both testifying for the State. McCarty testified that he told Beatty that the Birches, the robbery victims, might have some money and jewelry at their house. McCarty had previously worked for Mr. Birch. McCarty and Beatty discussed the Birches again at Beatty's house in Pine Bluff. Two or three weeks later, Beatty, White, Stephens and Williams (the deceased) showed up at McCarty's house and planned the robbery for that night. McCarty testified that they all had a part to play: Williams and White were to enter the house, Beatty was supposed to be at the front door, and Stephens was to be at the back door. McCarty was to drive the get-away car. McCarty stated that the group left his home in two cars, drove out to the country where they left one car, and drove back in McCarty's car. McCarty parked the car about a block and a half from the Birches, and everyone except McCarty got out. McCarty testified that, after he had been waiting for about ten minutes, he heard a shot. He started the car, and as he drove down the street, Beatty, Stephens and White got in and they drove to the place where the other car was parked.

Sammy White, the other accomplice, testified that, on the day of the crime, Beatty and Stephens approached him about needing a gun. He learned from them that a robbery in McGehee, Arkansas was planned. They waited for Williams, and then the three went to McCarty's house where they all planned the crime. According to White, he and Williams were to go in the house through the front door, Beatty was to be a lookout at the front door, Stephens was to be let in the back door, and McCarty was to drive the car. White further testified that there were more people inside the house than they anticipated and that they spent five to ten minutes looking for a floor safe that McCarty had told them was there. He testified that Stephens failed to show up at the back door and that he had trouble getting Williams, who was carrying an unloaded gun, to leave. As White was leaving, he stated he met Stephens at the back door and told him to get Williams. As he stepped out and Stephens stepped in, White said he heard a shot and proceeded to run to the car. He and McCarty were joined by Beatty and Stephens.

When they got to the other car, White testified that he, Beatty and Stephens drove to Monroe, Louisiana and, on the way, split up the money and jewelry taken during the robbery. The next morning, they went to the bus station and purchased tickets to Pine Bluff. White and Stephens, though, became nervous because the bus went through McGehee, and decided to drive the car back to Pine Bluff. White testified that Beatty did, however, get on the bus.

■ As was stated previously, evidence that establishes the crimes and tends to connect the appellants with the commission of those crimes, other than the testimonies of the two accomplices, White and McCarty, is necessary in order to sustain the convictions of Beatty and Stephens. We find the following corroborating evidence sufficient to sustain both convictions.

Concerning Stephens, the record shows that he was arrested in Ontario, California on December 3, 1983. The arresting officer, Robert Bernhard, testified that, while getting Stephens' wallet and cigarettes out of his truck at Stephens' request, he found some jewelry. He also found a piece of jewelry on Stephens' person and later found another item of jewelry in the back seat of the police car in which Stephens had been riding.

After being advised of his rights, Stephens gave a statement in which he said he had been given the recovered jewelry by the suspects in the robbery. He also stated he was with persons who had been discussing a robbery, that he went with them and that his role was to enter the rear of the house. Stephens further stated that he decided not to participate and ran to the car when he heard the gun shot. He drew a map for Officer Bernhard to illustrate the robbery scene and admitted that, in addition to the jewelry, he had received $200 in cash and a diamond ring which he had pawned.

■ The jewelry recovered from Stephens at the time of his arrest was identified as items taken in the robbery. Appellant Stephens' statement to the California police follows, in significant detail, the testimony of the accomplices regarding the events leading up to and during the robbery. In *Rhodes* v. *State*, 280 Ark. 156, 655 S.W.2d 421 (1983), where appellant admitted being at the scene of the crime, sufficient corroboration was found.

Appellant Beatty also admitted to others his participation in the crimes. A witness for the State, John Collins, testified that on 24 November 1983, he gave Beatty a ride from McGehee to Pine Bluff. Collins testified that a bus from Monroe had broken down and that Beatty told him he had come on a bus from Monroe. This coincides with accomplice White's testimony regarding Beatty getting on a bus in Monroe.

In addition, Officer Sheffield of the McGehee Police Department testified that, while riding together to a bond hearing, Beatty asked him about the statements made by the other parties involved in the case. Beatty told Sheffield he would be able to make a better decision on his plea if he knew what the others had said. Beatty also told the officer that on the night of the robbery he was so strung out that he could not really remember what had happened. Additionally Sheffield said Beatty told him Williams was so high on drugs that he (Beatty) was afraid to load the gun for fear Williams would hurt someone. Beatty also expressed anger when Sheffield told him the others had made statements, saying "It will be a lot different when we get to Cummins . . . [i]t wouldn't be but another year or so for killing an inmate . . ."

A directed verdict is proper only where there is no issue of fact for the jury to decide. In resolving the issue, an appellate court views the evidence in the light most favorable to the appellee and affirms where there is substantial evidence to support the verdict. *Mooring* v. *State*, 11 Ark. App. 119, 666 S.W.2d 720 (1984). Following the standard set out in *Paladino, supra*, we believe the evidence offered was clearly sufficient to present a question to the jury as to whether the accomplices' testimonies were adequately corroborated. We cannot say that the trial court erred in submitting this issue to the jury.

Affirmed.

CLONINGER and MAYFIELD, JJ., agree.